## PERRY ET AL v. DRURY ET AL.

1. **Will:** TRUST CREATED BY: BOND REQUIRED OF TRUSTEES. Persons to whom personal property is bequeathed by will, and who are charged with certain trust duties in respect thereto, are properly legatees, and not trustees within the meaning of section 2350 of the Code, requiring trustees under a will to give bonds. Such provision applies only to those who take property to hold for a determinate period, at the expiration of which it is to be transferred to the beneficiaries, and during the continuance of which period the estate remains unsettled and under the supervison of the probate court. SEEVERS, J., *dissenting*.

2. **Circuit Court:** AS A COURT OF PROBATE: EQUITY POWERS. The Circuit Court as a court of probate is invested by the statute with no general chancery powers.

*Appeal from Scott Circuit Court.*

FRIDAY, APRIL 22.

THE plaintiffs, who are legatees under the will of Mrs. Clarissa C. Cook, deceased, filed their petition in the Circuit Court of Scott county, sitting as a court of probate, asking that the executors of the estate be required to pay over the legacies to the plaintiffs without their first giving bonds as trustees under the will. The prayer of the petition was denied and an order was entered requiring the plaintiffs to execute bonds as prescribed by Code, § 2350, before the legacies shall be paid to them respectively. From this order William Stevens Perry, Bishop of Iowa, " The Trustees for Funds and Donations for the Diocese of Iowa," and the " Board of Missions of the Diocese of Iowa," appealed.

*George J. Boal* and *J. Howard Henry*, for appellants.

*Cook & Dodge*, for appellees.

BECK, J.—I. Mrs. Clarissa C. Cook, deceased, by her last will and testament made certain bequests in the following language:

"*Fourth.* I give and devise to the 'Trustees of Funds and Donations for the Diocese of Iowa' the sum of twenty thousand dollars, in trust, for the following purposes: I direct the said sum of money to be safely and securely invested, and that each year or half year, as the interest may be collected, the interest shall be paid to the destitute parishes in the Diocese of Iowa. In the event that the present Diocese of Iowa shall be divided into two or more dioceses, then I direct that the said fund may be justly and equitably apportioned among said dioceses. And I direct and request that the Bishop and the standing committee of the diocese shall, from time to time, determine which parishes are most entitled to the benefit of the fund; my wish being as far as possible to relieve the weaker parishes of the diocese. (Reduced to $10,000 by item sixth of codicil.)

"*Fifth.* I give and devise to the 'Trustees of Funds and Donations for the Diocese of Iowa,' the sum of ten thousand dollars, in trust, for the following purposes: I direct and request that the said principal sum shall be safely and securely invested at as high a rate of interest as is consistent with law, and shall provide for the payment of the interest semi-annually if possible; and that said trustees of the said fund shall pay semi-annually to the indigent, disabled clergymen of the Diocese of Iowa, and to the indigent widows of deceased clergymen of said Diocese, the interest on the said fund, so distributing the same as to afford relief to the most needy.

"*Seventh.* I give and devise to the 'Board of Missions of the Diocese of Iowa' the sum of ten thousand dollars; in trust, however, for the following purposes: The said sum shall be invested by the board, and the interest accruing therefrom each year shall be applied by the said board in the support of Missions in the Diocese of Iowa."

"*Forty-eighth.* I give and devise to the Bishop of the Diocese of Iowa, who may be elected to succeed the late Bishop Lee, and to his successors in office, the sum of ten

thousand dollars, in trust, for the uses and purposes following: I direct that the said sum shall be securely invested at as large a rate of interest as can be obtained, consistent with the law, and the interest accruing therefrom shall annually, or semi-annually, as the same may be collected, be applied and appropriated by the said bishop and his successors in office to the support of the weak and destitute parishes of the Protestant Episcopal Church in the Diocese of Iowa. As I have heretofore made provision for the parishes in Scott county, I direct that this fund shall only be used for weak parishes outside of the county of Scott, in said diocese; the said money to be so appropriated each year as the bishop may, in his judgment, consider for the best interest of the parishes to which the money may be applied.

"But in no event shall more than five hundred dollars be appropriated to any one parish in any one year. If the present Diocese of Iowa should be divided into two or more dioceses, then it is my will, and I direct, that the said fund above provided shall be owned by and used in the diocese in which the city of Davenport, in county of Scott, may be located.

"*Fiftieth.*   All the rest, residue and remainder of my estate of every name and kind, whether from my late husband's estate or otherwise, after the payment of the above legacies, I direct shall be sold and converted into money, and shall be divided as follows, to-wit:   In two equal parts; and I give and devise one part, that is, one-half of the same, to the Trustees of Clarissa C. Cook's 'Home for the Friendless;' or if the same shall have become incorporated, then I direct that the same shall be paid to the proper officers of said corporation, to be used and employed as the fund heretofore provided for said home, and as more particularly specified in article eleven of this will.   And I give and devise the other half of the said sum to the 'Trustees of Funds and Donations of the Diocese of Iowa,' to be used and employed for indigent, disabled clergymen, and widows of deceased clergymen in the

Diocese of Iowa, as particularly specified in article 5th of this will."

It will be observed that under these provisions of the will "The Trustees of Funds and Donations for the Diocese of Iowa," "The Board of Missions of the Diocese of Iowa," and the "Bishop of the Diocese of Iowa," are legatees under the will, and the "Trustees of Funds and Donations of the Diocese of Iowa" are also named as the residuary legatees of all the property of the deceased.

The relief sought by the plaintiffs in the petition is that an order be entered by the court requiring the executors of the estate to pay the legacies bequeathed to plaintiffs, the legacies named in the portion of the will above set out, without demanding or receiving from them bonds as trustees under the will.

II.   At the hearing of plaintiffs' petition the will of Mrs. Cook was read in evidence, and the following facts were admitted by the parties:

"*First*.   That the religious organization known as the Diocese of Iowa is composed of William Stevens Perry, Bishop, the clergymen of the Protestant Episcopal Church located and residing in the State of Iowa, and of the parishes in communion with said Protestant Episcopal Church in the various parts of said State of Iowa; that said Diocese of Iowa is not incorporated, but it acts through its Annual Convention, which is composed of the bishop and clergy of said diocese, and lay delegates from the several parishes.

"*Second*.   That the 'Trustees of Funds and Donations of the Diocese of Iowa' is composed of the bishop and standing committee of said diocese, and is incorporated under the laws of Iowa, for the purpose of holding for said diocese any property given or acquired for objects connected with the Protestant Episcopal Church in said diocese, with power to accept gifts of real or personal property, and to invest and apply the same for the benefit of the clergy and parishes connected with said Diocese of Iowa and said diocese; that

said corporation is composed of persons elected by the Annu-al Convention to serve in that capacity until the next Annual Convention is held, and reports annually, to the convention, the condition of property in its hands.

"*Third.* That the said 'Board of Missions' of the Dio-cese of Iowa is not incorporated, but is in the nature of a standing committee of the convention of the said Diocese of Iowa, its members being elected by each Annual Conven-tion to serve until the next succeeding Annual Convention is held, and is required to report annually to said convention; this is in pursuance of the constitution and canons of the said diocese.

"*Fourth.* That the standing committee of the diocese consists of three presbyters and three laymen communicants of the church, who are elected by ballot at each Annual Con-vention; and they are required to report annually to the con-vention a correct account of their acts.

"*Fifth.* That William Stevens Perry, as Bishop of Iowa, is *ex-officio* the president of said 'Trustees of Funds and Donations' and of said 'Board of Missions' according to the articles of incorporation of said trustees and the constitu-tion and canons of said Diocese of Iowa, but the office of bishop is not incorporated.

"*Sixth.* That the constitution and canons of the diocese were enacted by the convention of the diocese, and such convention is authority for all the laws enacted in the di-ocese.

"*Seventh.* That the estate is ample to meet all the be-quests and devises under the will, with a considerable resi-due."

No other evidence was offered or introduced upon the hearing.

The Circuit Court denied the prayer of the petition and ordered that before the payment of the legacies the respect-ive legatees should severally execute bonds as required of

trustees appointed by will under Code, § 2350, in an amount equal to the respective legacies.

III. The question for determination in the case is this: Do the statutes of the State require the respective lega-

**1. WILL: trust created by: bond required of trustees.** tees to execute bonds for the faithful appropriation and care of the funds bequeathed to each? Counsel for the defendants do not deny that a court of chancery in the management of the trust funds might have exempted the legatees from giving bonds before the enactment of § 2350 of the Code, but maintain that under the statute the Circuit Court has no authority so to do. Counsel for the plaintiffs insist that this statute has no application to the legatees who are parties to the proceedings, for the reason that they are not such trustees as are contemplated therein. This statement sufficiently discloses the contention between the parties, which we shall now proceed to consider.

Code, § 2350, is in the following language: "Trustees appointed by will or by the court must qualify and give bonds the same as executors, and shall be subject to control or removal in the same manner."

Section 2312 provides as follows: "The Circuit Court of each county shall have original and exclusive jurisdiction of the probate of wills, and the appointment of such executors, administrators or trustees as may be required to carry the same into effect; of the settlement of the estates of deceased persons and of the persons and estates of minors, insane persons and others requiring guardianship, including applications for the sale of real property belonging to any such estates, except as prescribed in chapters one, two and three of title fifteen."

These are the only statutes applicable to the question before us.

Two classes of persons may take personal property under a will. The first class includes those who take property to hold for a determinate period, and at the expiration thereof

it is to be transferred to the beneficiaries under the will. Such persons are in no sense legatees; they are merely trustees.

The other class includes those to whom personal property is bequeathed and who are charged with certain trust duties in respect thereto. They are, in fact, legatees charged with executing the benevolent or other purposes of the testator. Considered in their relations to the testator and the will they are legatees. Regarded in their relations to the beneficiaries of the property which they take under the will, they are charged with trust duties. But they cannot be called trustees without words of qualification. They take the property as legatees, and in their relations to the will and in the settlement of the estate are known and designated as such.

The plaintiffs belong to the second class above designated, and in the proceedings relating to the estate in the probate court are to be regarded and designated as legatees, and not as trustees. They do not, therefore, come under the provisions of Code, § 2350.

IV. This construction of the statute is supported by various considerations, some of which we shall proceed to state.

It will be remembered that the proceedings now under review were pending in the court of probate. Its jurisdiction and powers are prescribed in Code, § 2312, above quoted. Its jurisdiction extends to " the probate of wills, and the appointment of such executors, administrators or trustees as may be required to carry the same into effect," and " to the settlement of the estates of deceased persons." The will in the case before us, as to the legacies in question, is " carried into effect" by the payment of the funds bequeathed to the respective legatees, and, when all the legatees have been so paid, the estate is regarded as settled. If a legatee is to receive funds through a trustee mentioned in the will, the final settlement of the estate cannot be made until he is paid by the trustee. But when, as in the case of plaintiffs, funds are bequeathed to be used according to the directions of the testator, the estate, as to such legacies, is settled when the lega-

tees receive the funds bequeathed. In the case before us, the, parishes, clergymen, and others, who are, in the distribution of the income of the funds, to receive benefits therefrom, are not regarded as legatees, but; rather, beneficiaries of the funds; but this does not require us to consider them as legatees.

If the position of the defendant's counsel is correct, when would an estate of this kind be settled? The plaintiffs, as legatees, and their successors, are to hold the funds bequeathed in perpetuity, the income thereof, only, being appropriated.

How long shall a bond, to be required from a legatee in this case, run? If perpetually, who would charge his estate with such an obligation, or of what value might such security finally become? If the bonds are to be renewed from time to time, under what authority of the statute can this be done? If they may be so renewed, or, if they bind the sureties and their heirs as long as their families exist, when may the estate before us be settled? Yet the probate court, having jurisdiction to settle estates, ought to be able so to do in all cases. But in this case there never could be a settlement if the view of the defendant's counsel be correct.

These questions and suggestions present insuperable objections to the decision of the court below. It surely was not the intention of the legislature, as expressed in the statute quoted, to so provide that the settlement of an estate should be interminable, and that a case may be pending in the probate court without any hope or expectation of the parties interested that it will have an end.

Under our view of the law, the beneficiaries of the bequests to plaintiffs are not left without relief, or a court to which they may apply for an appropriate remedy, should the legatees fail, through any cause, to administer properly the trusts conferred upon them by the will. The plastic powers of the court of chancery could be invoked to control, restrain, and energize the legatees in the discharge of their trust duties. In this forum they could be required to carry

out the very purpose of the testator, and misappropriation, embezzling, or wasting of the funds could be prevented by requiring security, or by removing the funds from the hands of the legatees, should they prove unfaithful.

Proceedings to obtain these remedies could be instituted at any time by beneficiaries of the trust, or by persons interested therein, and actions could be prosecuted whenever the legatees, or their successors, become unfaithful, or the interests of the beneficiaries demanded it.

These powers of equity are not abridged by statute, and are not conferred upon the probate courts by Code, § 2312.

Under this provision the courts last named are clothed with exclusive jurisdiction of probate matters and no chancery powers are conferred upon them. As the plaintiffs are not to be regarded as trustees, in the sense of the term as used in this provision, 2. CIRCUIT COURT: as a court of probate: equity powers. and in § 2350, the probate court has no jurisdiction to supervise their action in carrying out the intentions of the testator, or to require them to provide against their possible defaults by the execution of bonds. It is our opinion that the Circuit Court erred in holding otherwise.

REVERSED.

SEEVERS, J., dissenting.