C. F. MORRISON v. R. B. HARTLEY.

(Filed 10 December, 1919.)

**1. Evidence—Writings—Telegrams—Parol Evidence.**

Where a telegram, material to the inquiry, has been given to the defendant's brother, and defendant has failed to produce it upon notice, and there is evidence that the original 'has been lost and the records in the telegraph office destroyed, it is sufficient to admit of parol evidence of its contents.

**2. Evidence—Writings—Letters—Parol Evidence.**

Where the contents of a letter are not directly in issue and it is not the purpose of the action to enforce any obligation created by it, its contents may be shown by parol when relevant to the inquiry.

**3. Evidence—Contracts—Lands—Fraud—Damages—Nonsuit—Trials.**

In an action to recover damages for fraud in inducing a purchase of real estate at a fictitious price, a judgment as of nonsuit upon the evidence will not be granted when it tends to show a false representation as to the value of the land made with the knowledge that it was untrue, and with intent to deceive, and was relied on by the other party to his damage.

**4. Evidence—Contracts—Lands—Fraud—Measure of Damages.**

Where the defendant has induced the plaintiff by fraud to purchase land at an excessive price, the measure of damages is the difference between the real value of the lands and its value as fraudulently represented to be.

**5. Limitation of Actions—Contracts—Fraud—Discovery—Statutes.**

Where an action for damages will lie for fraud in inducing the purchasing of land at an excessive price, the three-year statute of limitations is applicable and will begin to run from the time the fraud was discovered, or should have been discovered, under the rule of the prudent man.

APPEAL by defendant from *Long, J.,* at the July Term, 1919, of CATAWBA.

The plaintiff sues to recover damages for fraud in the sale of real estate (160 acres) in Oklahoma, basing the action on alleged false representations of defendant vendor, ·that it was worth $200 per acre, their purpose being investment and speculation.

In the summer of 1909, the plaintiff, the defendant, and W. L. Hartley, a brother of defendant, all residents of North Carolina, went to· Oklahoma and purchased 160 acres of land near the town of Britton,. for $16,000. In a few days after the purchase of this land, they declined an offer of $20,000 for it. They returned home, and in November, 1909, W. L. Hartley, who had other holdings in Oklahoma, removed from North Carolina, and became a resident of that State. In December, 1909, W. L. Hartley listed their said 160-acre tract with Charles Phelps, a real estate dealer, at the price of $25,000, and on 10 January,

1910, said broker secured a purchaser, in the person of H. C. Finley, at the price of $25,000. Morrison and R. B. Hartley, at the instance of Morrison, declined to make a deed, and Phelps sued the three joint owners for commissions. The defendants in that action prevailed, not on the ground that a sale had not been effected, but on the ground that the contract with Phelps was conditioned upon the defendants being able, through the plaintiff, to secure certain other lands at a given price, and that said condition had not been, or could not be, complied with.

In March, 1910, the Hartleys sold their two-thirds undivided interest in the land to Morrison, on the basis of $25,000 for the entire property. Land values in that section declined very materially, and, seven years after his purchase from the Hartleys, he claims to have discovered that in that transaction a fraud had been perpetrated upon him. He made the discovery through W. L. Hartley, who, it appears, gave the information on account of a serious disagreement with his brother, the defendant.

The evidence of the plaintiff tends to prove that the fraud was perpetrated in March, 1910; that the defendant and his brother, W. L. Hartley, were in Oklahoma the first of the month and discovered that there was a great shrinkage in land values, and that the land in which they were jointly interested with the plaintiff was not worth more than $20 or $40 an acre; that they conceived the plan of selling to the plaintiff, who was in North Carolina; that they telegraphed the plaintiff that W. L. Hartley was about to sell his interest to one Finley on the basis of $25,000 for the whole land, and that it was worth $200 per acre; that the defendant returned to North Carolina and repeated his representations to the plaintiff; that relying on these representations, which were false, the plaintiff bought, and that he did not discover the fraud until 1917, when W. L. Hartley, upon disagreement with his brother, the defendant, told him of it. Also, that the defendant and his brother tried to prevent the plaintiff from discovering the fraud.

The evidence of the defendant was in direct contradiction of that for the plaintiff.

The jury returned the following verdict:

"1. Did the defendant falsely and deceitfully represent to the plaintiff that the market value of the land mentioned in the complaint was worth greatly in excess of its actual market value, and that W. L. Hartley was about to sell his interest therein to an outside party, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff rely thereon, and was he thereby induced to purchase a further interest in said land to his injury? Answer: 'Yes.'

"3. What damage is plaintiff entitled to recover of the defendant? Answer: '$3,000.'

"4. Did plaintiff pay out moneys for interest and taxes for the use and benefit of the defendant, as alleged in the complaint? Answer: 'Yes.'

"5. If so, what is the amount of such interest and taxes? Answer: '$1,160.'

"6. Is the plaintiff's action barred by the statute of limitations, as alleged in the answer? Answer: 'No.' "

Judgment on the verdict in favor of the plaintiff, and the defendant appealed.

*Councill & Yount and E. B. Cline for plaintiff.*
*W. C. Newland, Mark Squires, and W. A. Self for defendant.*

ALLEN, J. There are twenty-three exceptions in the record, sixteen to the admission or exclusion of evidence, one to the refusal to nonsuit, two to instructions on the issue of damages, three to instructions on the issue of the statute of limitations, and one to the signing of the judgment.

None of these require extended discussion, because the real controversy was one of fact, and most of the exceptions were taken as matter of precaution during the progress of the trial.

Those principally relied on are to permitting the contents of a telegram, purporting to have been sent by the defendant to the plaintiff in 1910, from Oklahoma to induce the plaintiff to buy, to be proven by parol, another to allowing the plaintiff to introduce a copy of a letter written by the defendant to his brother in 1916, and to the refusal to enter judgment of nonsuit.

The telegram was material to the inquiry, and the loss of the original was shown. The plaintiff testified he received the telegram, and afterwards gave it to the defendant, who said he wanted it "about dates" in a controversy with his brother, and the defendant, upon notice, failed to produce it, and it was also shown that the record in the telegraph office had been destroyed.

This was sufficient foundation for admitting parol evidence.

The loss of the letter, a copy of which was introduced, was not established, but the letter was not directly in issue, and it was not the purpose of the action to enforce any obligation created by it, and, "The rule excluding parol evidence as to the contents of a written instrument applies only in actions between parties to the writing, when the enforcement of any obligation created by it is substantially the cause of action." *Holloman v. R. R.,* 172 N. C., 375. See, also, *Faulcon v. Johnson,* 102 N. C., 268; *Carrington v. Allen,* 87 N. C., 354; *Ledford v. Emerson,* 138 N. C., 502.

The motion to nonsuit could not have been allowed, because evidence was introduced tending to prove a false representation as to the value of the land, made with the knowledge that it was untrue and with intent to deceive, relied on by the plaintiff to his damage, and it was for the jury and not for us to say whether it was worthy of belief.

His Honor instructed the jury that the measure of damages was the difference between the real value of the land and its value as it was represented to be, and that the action was barred if more than three years elapsed before the bringing of the action after the discovery of the fraud by the plaintiff, acting as a prudent man, which is in accord with our precedents.

The verdict might well have been in favor of the defendant, as the plaintiff had to rely on the evidence of W. L. Hartley, who admitted that he conspired with the defendant, his brother, to defraud the plaintiff, and who made no disclosure until he and his brother disagreed, but these were matters for the consideration of the jury, and on the exceptions there is no error which authorizes us to order a new trial.

No error.