A. A. BUCHAN AND JOSEPH STRICKLIN v. JOHN L. KING, J. R.
THOMAS, ET AL.

(Filed 19 October, 1921.)

**Evidence—Books—Records—Race Horses.**

Upon an action to recover damages for the false and fraudulent representations of the age of a race-horse, which induced the purchase by the plaintiff, a book entitled a year book, purporting to give the ages of race-horses and tending to establish the defendant's defense, may not be properly received in evidence, unless it is shown to be an authentic record and received and regarded by persons conversant with racing matters as official; and when such does not appear in the evidence, parol evidence of its contents is also properly excluded.

APPEAL by defendant from *Bond, J.,* at Spring Term, 1921 of LENOIR.

This action was brought to recover damages for a false and fraudulent representation as to the age of a race-horse, which induced. the plaintiffs to purchase the same. The jury returned a verdict for the plaintiff and assessed his damages at $250, and defendant appealed from the judgment.

*No brief for plaintiffs.*
*Thos. C. Hoyle for defendants.*

WALKER, J. There was evidence for the plaintiff tending to show that the horse, which was represented to be seven years old, was actually nine years of age, and contrary evidence for the defendant. There was also proof by the defendant that if the representation was made and was not true, the defendant acted upon the reasonable belief that it was true, having been handed a registry, at the time of his purchase, by the man who sold him the horse, wherein it appeared that the animal was but seven years old. The jury, notwithstanding this proof (which was competent as showing defendant's good faith in making his statement as to the horse's age) found against the defendant upon the issue of fraud. The court, over defendant's objection, permitted plaintiffs' witness, S. B. Harper, to testify that there was a book, entitled the Year Book, which purported to give the ages of race-horses; that he had seen this book, and it listed the horse in question by his name, "Ned P., Jr.," and stated that the horse was foaled in 1909, from which it therefore appeared that he was nine years old at the time of the sale by the defendant, J. R. Thomas, to the plaintiff. This witness did not say with assured accuracy how the book was compiled, or whether it was accepted and relied on by any official body of horsemen for the information it professed to contain. His testimony in this respect was not full or

satisfactory, as will appear further on, and does not show the book to be an authentic record, and it will further appear therefrom that the sources from which its author, or authors, gathered the information, to say the least of it, were very questionable. Defendants objected to this testimony, because the witness could not speak of what he had seen in the book, but that the book itself was the only competent evidence of its contents and should be produced. His Honor in the beginning, when plaintiffs' first witness, Joseph Stricklin, who also referred to this book, was being examined, excluded all reference to this book, but admitted it when plaintiffs' witness, S. B. Harper, was testifying in rebuttal of defendants' evidence.

We hold that the book would be competent and relevant evidence under certain conditions and circumstances, which do not exist here, as will appear by the following authority: "Records published by authority of a recognized trotting association, if accepted and acted upon by persons conversant with racing matters as authentic and official, have been held admissible for the purpose of showing the speed of a horse or of others to whom he is related. So under statute in Iowa a printed copy of a herd book in which cattle are registered has been held admissible if it be shown to be a standard authority recognized by cattle breeders, it being regarded as an historical work on a particular subject. The admissibility of books kept to register cattle and other animals as coming within the exception to the hearsay rule relating to proof of pedigree is discussed elsewhere." 17 Cyc., 425 (e). And see, further, *R. R. v. Sheppard,* 56 Iowa, 68; *Kuhns v. Chicago, etc., Ry. Co.,* 65 Iowa, 528; *Crawford v. Williams,* 48 Iowa, 247. All the requisites noted in these authorities to the competency of the book are not found to be present in this case, and not even the majority of them, if any of them do clearly appear, and those said to be lacking in the case last cited *(Crawford v. Williams)* have not been shown here. But we are of the opinion that parol evidence of an entry in the book was not competent, and should not have been received for the reason that it does not appear that the book was made up and published in compliance with the essential requirements of the rule above stated. It was not shown that it was published by a recognized trotting association, and accepted and acted upon by persons conversant with racing matters, as authentic and official. This very question was decided in *R. R. v. Sheppard, supra,* where it was held: "(1) In an action to recover the value of a trotting horse, evidence of his pedigree, and that some of his blood relations have a *record* for speed, is competent as affecting his value, and when such record is published by authority of a recognized trotting association, and the publication is accepted and acted upon by those interested in and conversant with such matters, as authentic and official,

it is not error to admit evidence of the horse's speed as shown by that record." There are other authorities to the same effect.

The cases of *Morrison v. Hartley*, 178 N. C., 618 (opinion by *Allen, J.*), and *Miles v. Walker*, 179 N. C., 479, do not militate at all against this view. In the *Morrison case* the document was a letter, and in the *Miles case* it was a written sub-lease. They were not records or registers of important facts or events, such as that in this case, and were not the coöperative act of a body of men or association, and were not required to be published, accepted and acted upon by persons conversant with matters to which they relate, as authentic and official, and as reliable for reference in trade transactions or in racing. Those cases hold: "Where the contents of a letter are not directly in issue and it is not the purpose of the action to enforce any obligation created by it, its contents may be shown by parol when relevant to the inquiry." *Morrison's case, supra.* The principle underlying the two cases just cited is elementary that where the writing relates to a matter collateral to the issue, but is or becomes relevant to it at any stage of the trial, its contents may be shown by parol. The party against whom it is produced may attack the testimony upon the ground that no such paper-writing ever existed, or that, if it did, its contents was not truly stated by the witness, or he may deny its relevancy to the issue, and rely upon its being collateral and immaterial. But that does not exclude the oral evidence in cases like those we have cited or which come within the rule they lay down.

It appears by the testimony of the plaintiffs' witness, S. B. Harper, that the alleged register or record was borrowed by him at the request of Stricklin and that he brought it to Stricklin, one of the plaintiffs, and so far as appears the latter has possession of it. If the parol evidence had been competent, the defendant could have answered it by requiring the production of the book by Stricklin, if he had taken proper proceedings to that end, or if a third party had the register, by a *subpœna duces tecum* issued to him or other appropriate procedure. But the parol evidence was incompetent because the book itself was not competent, and if plaintiffs wish to avail themselves of the book's contents, or any part thereof, they must in some way show the facts in regard to it which we have stated above, or something substantially to the same effect. S. B. Harper, plaintiffs' witness, testified: "I saw the year book; said book listed the horse, age of which was in controversy, as 'Ned P., Jr.,' and stated that he was foaled in 1909. I borrowed the book and brought it to Stricklin. There were no sworn statements in the book, but it claimed to give the record of race-horses and their age. I do not know where the information is secured from. I saw the horse driven around the track, and he was a nice horse and moved nicely." Defendants' witness,

N. M. Reaves, testified: "The book referred to by Harper was what is known as the Year Book, and is just about on a par with a newspaper report. It is made up by men who go around and see the races and get their information as best they can from statements given them. They do not mean to misrepresent, but the information thus gathered is not always correct. They often make mistakes. The statements are not sworn to." While under this and other similar testimony, the reliability of the "Year Book" may be seriously questioned, as ably argued by Mr. Hoyle, it was not evidence under the present facts and could not be referred to for information as to pedigree and age by the witness.

If the book itself would not be competent, if introduced, without further evidence as to its nature, make-up and reliability, oral evidence of its contents cannot be introduced.

We were not favored with a brief from the plaintiff, which, if filed, would, we have not doubt, have aided us very much in and greatly facilitated our investigation of the case, which has been prolonged for the lack of it. It was necessary for us to ascertain if there was any legal ground upon which this oral evidence could be held as competent, and by an exhaustive and patient search among the best authorities on the subject, we have not been able to find any, but, as appears above, the authorities are the other way. We are greatly helped in our work here by the usually well-prepared briefs of counsel, which are the results of their deliberate thought upon and consideration of the questions involved, and we express the hope that they will give us the benefit of them, whether compelled by our rule to do so or not, and as a voluntary contribution to the correct decision of the case. We have been the more careful in the study of the plaintiffs' side of the case because of the absence of a brief, and have formed our conclusion definitely after a full investigation of the same.

This is an important case for the defendant Thomas, at least, as there is more involved for him than mere dollars and cents, his character having been gravely impeached by the verdict, finding that he was guilty of a fraud in a horse trade, and if he is unable finally to acquit himself of the charge, it will be a permanent record against him and a serious handicap to him in his future life. It is also important to the plaintiffs, so far as mere money can make it so, as they have recovered $500, the original price of the horse. The plaintiffs' note which they gave for the purchase price has been transferred to a purchaser in due course, for value and without notice, and they are entitled, therefore, to recover for the fraud, if any was practiced upon them.

The verdict will be set aside and a new trial ordered, because of the error in admitting the evidence as to the contents of the book.

New trial.