B. V. RIVENBARK v. SHELL UNION OIL CORPORATION, SHELL EASTERN PETROLEUM PRODUCTS, INC., H. J. FARROW and RAYMOND FARROW.

(Filed 22 May, 1940.)

**1. Bill of Discovery § 9—**

An application for an order for inspection of writings is sufficiently definite when it refers to papers under the exclusive control of the adverse party which relate to the immediate issue in controversy, and which cannot be more definitely described by applicant.

**2. Bill of Discovery § 8—Fact that corporate defendant has liability insurance held competent as some evidence that individual defendants are its agents.**

Plaintiff instituted this action to recover for injuries resulting when he slipped and fell on some oil or grease on the floor of a filling station, alleging that defendants were negligent in failing to keep the floor in a reasonably safe condition. The corporate defendants filed answer alleging that one of them had ceased to exist prior to the occurrence of the injury and that the other corporate defendant leased the filling station to one of the individual defendants and retained no control or supervision over the same. The individual defendants alleged that they were lessees of the station and operated the same independently as owners without control or supervision of the corporate defendants. Plaintiff filed affidavit averring that the corporate defendant had taken out a policy indemnifying it against liability to the public in the operation of the station, and requested that it be required to produce the said liability policy and letters and telegrams calling on the insurer to defend the action, and that plaintiff be allowed to inspect same. *Held:* The fact that the corporate defendant had taken out insurance indemnifying it for liability in the operation of the station, while not evidence of negligence, is some evidence that it retained supervision and control in the operation of the station and that the individual defendants were its agents, and the granting of plaintiff's application was not error. Michie's N. C. Code, 900, 1823, 1824.

APPEAL by defendants Shell Union Oil Corporation and Shell Eastern Petroleum Products, Inc., from *Hamilton, Special Judge,* at October Term, 1939, of NEW HANOVER. Affirmed.

The complaint alleges, in part:

"Plaintiff is informed, believes and alleges that the two corporate defendants, under some arrangement between themselves, own and operate said filling station, under the lease from Hughes Brothers, that the same is under their supervision and control, and that the defendants H. J. Farrow and Raymond Farrow operate the same for the said corporate defendants, as their agents, or managers or employees, or under some profit-sharing partnership arrangement between them and their codefendants; that the said individual defendants have long been employees of the Shell Oil Corporations—that is, of the corporation which at the time was handling and distributing Shell gasoline and oils.

"In conducting the business of said filling station and putting gasoline and oils and greases in the cars, some gasoline and oils and greases will drip and spill on the floor of said filling station and cause same to be slick and dangerous, unless special care and attention is used to prevent said spilling and dripping of gasoline and oils and greases, and unless the floor of said filling station is constantly washed up and cleaned, that some drippings will ordinarily occur in the usual run of business and it is necessary that the floor be frequently washed and cleaned of these slick substances.

"That on or about the 8th day of October, 1938, along during the afternoon of said day, the same being on Saturday, the plaintiff B. V. Rivenbark drove up in said filling station operated by the defendants at the southwest corner of 17th and Market Streets in the city of Wilmington, N. C., to buy some gasoline and have same put in his car. Upon stopping at the tank or pump, the plaintiff started to get out of his automobile, and the defendants had negligently left and permitted some grease and oil, or slick, greasy substance of some sort, to be dropped on the floor of said filling station, and to remain there, and unknown to the plaintiff, as he stepped out of his automobile he stepped on said substances and his feet and legs flew out from under him, and, on account of said negligence of the defendants in permitting the substances to be there, and not removing it and not warning the plaintiff that same was there, he was thrown violently onto the cement floor and against his automobile and against a concrete casement standing several inches up around the tank or pump, and with a sharp edge, and plaintiff was thrown suddenly and violently against said concrete casement, or platform, and his back and several ribs were broken, and his right arm severely injured around his elbow, causing the plaintiff great suffering and anguish, both of body and mind, and causing him to incur considerable expense for doctors and hospital bills and nurses. The plaintiff had to have his back and body put in a cast, and has been incapacitated, and is seriously and permanently damaged in the sum of $20,000.00.

"The defendants were negligent in that they dropped grease and oils

and slick substances on the floor of the filling station, where they knew customers would come and get out of their automobiles to have them serviced, and would likely step on same and cause them damage and injury; in that they permitted said greases and oils and slick substances to be and to remain on said floor; in that they did not take the proper precaution to keep said floor clean from these greases and oils and slick substances and to keep the floor safe for their customers, and in that the defendants did not warn the plaintiff of said danger, especially after they knew, or should have known that said greasy and slippery substance was on the floor. The defendants were also negligent in constructing and maintaining the concrete casement or raised place in said filling station near where people would get out of their cars when buying gasoline and oils, etc., and in having the same with a sharp and dangerous edge, and in not having the same protected, and in not taking the precautions necessary to prevent people from getting out of the cars and stepping on the slick and dangerous floor, and substance, permitted and maintained by the defendants; and in not maintaining a safe place for their customers to come and be served.

"Wherefore, plaintiff prays judgment against the defendants for $20,000.00 damages, and for costs and general relief."

Defendants Shell Union Oil Corporation and Shell Eastern Petroleum Products, Inc., answering the complaint herein, say, in part: "It is admitted that Shell Union Oil Corporation is a corporation duly created, organized and doing business in North Carolina; however, it is denied that Shell Eastern Petroleum Products, Inc., is a corporation duly created and existing. Further answering this article of the complaint, defendants say that Shell Eastern Petroleum Products, Inc., has ceased to exist, all its assets and business having been taken over by Shell Union Oil Corporation on or about 2 November, 1936; and that at the time of the matters and things complained of there was no such person or corporation as Shell Eastern Petroleum Products, Inc., in existence. . . . Further answering this article of the complaint, these defendants say that the defendant H. J. Farrow, at the time or times complained of, was lessee of the filling station referred to in said article, and that he and his brother, the defendant Raymond Farrow, were operating the same under their own exclusive control, supervision, and management, and that these defendants had no supervision, control, or management over the defendants H. J. Farrow and Raymond Farrow, on the premises referred to as the filling station at 17th and Market Streets, at the time complained of."

The defendants deny the material allegations of the complaint and in answer say:

"It is admitted that gasoline and oils are sold at the filling station

which is situated at the intersection of 17th and Market Streets, and it is also admitted that Shell products are sold there, but not exclusively; and it is admitted that Shell's signs are displayed there; but as to all other allegations contained in said paragraph the same are denied; and the defendants H. J. Farrow and Raymond Farrow, as a further answer to said paragraph, allege that they are lessees of said filling station property and that they are the sole owners and operators of said filling station business, and that they run said business freely and independently of any person, firm or corporation whomsoever. . . . That the floor of their said filling station is swept and cleaned numerous times daily, and that every precaution is taken to keep said filling station clean and safe at all times, and special care and attention is at all times used to keep the floors of said station in a perfectly clean and safe condition, and any allegation in this paragraph which by insinuation or otherwise alleges that these defendants did not keep their filling station in a proper and safe condition is untrue and is therefore denied. . . .

"And for a further defense, these defendants say that on the day and at the time plaintiff entered the filling station at 17th and Market Streets in the city of Wilmington, leased and operated by these defendants, plaintiff was driving a 1929, Model A, Ford truck, which was in a dilapidated condition; that he negligently and carelessly drove his said truck up to and against one of the pumps in said filling station, for the purpose of buying a soft drink and nothing more, and stopped, leaving insufficient room to alight from the truck with safety; that, having stopped his truck, plaintiff proceeded to alight from it without proper care and circumspection, with the result that he slipped on the running-board of said truck, which did not have adequate support and was improperly placed, and stumbled against the aforesaid pump, and that if plaintiff sustained injuries on the premises leased and operated as a filling station by these defendants, which is denied, said injuries were due to the negligence and carelessness of the plaintiff himself, as herein alleged, and these defendants plead such negligence and carelessness on the part of the plaintiff in bar of this action. Wherefore, having fully answered, these defendants ask judgment: That this action be dismissed and they go without day."

Notice, set out below, was founded on affidavit duly sworn to, as follows: "W. K. Rhodes, Jr., and I. C. Wright, each being duly sworn, says that they are of counsel for the plaintiff in the above entitled cause, and according to their information, there is a policy of liability insurance covering the filling station in question, and any and all operations thereunder, payable to, and for, the protection of the Shell Union Oil Corporation and Shell Eastern Petroleum Products, Inc., or one of them, and that after the injury in question occurred the liability company was

notified by the corporate beneficiary, and after this suit was brought that the said liability company was called upon to defend it, and the same is being defended by the liability carrier, and that this is material evidence for the plaintiff to show that the filling station in question was under the management and control of the corporate defendants, and that the Shell Union Corporation has recognized its responsibility and has taken this step to protect itself. Wherefore, plaintiff prays that the policy be produced, and that the letters and telegrams, or copies thereof, calling on the liability carrier to defend the case be produced. W. K. Rhodes, Jr.—I. C. Wright. (Duly sworn to 26 Oct., 1939.")

"NOTICE: To Shell Union Oil Corporation, Shell Eastern Petroleum Products, Inc., H. J. Farrow and Raymond Farrow, and to Messrs. Rountree & Rountree, and Mr. Addison Hewlett, Jr., their attorneys, take notice: That you are hereby notified and requested to produce at the hearing of this cause in the Superior Court in the courthouse in Wilmington, N. C., all policies of liability insurance for the protection of the Shell Union Oil Corporation, and/or the Shell Eastern Petroleum Products, Inc., and to let the plaintiff and his counsel have an inspection and take a copy thereof, and you will further take notice that the plaintiff will ask the court for an order requiring the production of all of these policies of insurance, or policies protecting you, or either of you, from liability or loss on account of the operation of the filling station at the southwestern intersection of 17th and Market Streets, in the city of Wilmington. This the 17th day of October, 1939. W. K. Rhodes, Jr.—I. C. Wright, Counsel for Plaintiff."

The reply to notice of application for order to produce is as follows: "Now come defendants, Shell Union Oil Corporation, and Shell Eastern Petroleum Products, Inc., through their counsel, Rountree & Rountree, and replying to the notice of the plaintiff's counsel of their intention to apply to the court for an order directing the defendants to produce all policies of insurance protecting them from liability or loss on account of operation of a filling station at the southwestern intersection of Seventeenth and Market Streets, in the city of Wilmington, N. C., and requesting an inspection of all such policies, and say: that they do hereby refuse the request of plaintiff's counsel to produce any policy or policies of insurance, and that they object to the court's granting any order to produce said policy or policies, or to permit an inspection thereof, for the reason that any such policy, or policies, of insurance are totally irrelevant to the matters and things in controversy in this cause; that no insurance company is a party to this cause and nothing that might be contained in any policy or policies of insurance is material to the trial thereof; that this application for an order to produce policies of insurance appears to be an effort on the part of plaintiff to bring in irrelevant,

incompetent, and prejudicial matters in the trial of this cause in order to influence the court and jury, and should not be allowed. Wherefore, defendants, Shell Union Oil Corporation, and Shell Eastern Petroleum Products, Inc., pray that plaintiff's application be refused."

The following order was signed by the court below: "It appearing that the policy of liability insurance in force at the time of the injury, and the letters and telegrams from the corporate defendant Shell Union Oil Corporation to the liability carrier calling on it to defend this case, are germane to the issues involved in this case, and that they are in possession of said company, or copies thereof, the company is ordered to produce same at the trial, and to furnish same to the plaintiff for inspection, and permit the plaintiff to take a copy not later than sixty days from this date. This the 26th day of October, 1939. Luther Hamilton, Judge Presiding."

To the foregoing order defendants excepted, assigned error and appealed to the Supreme Court.

*W. K. Rhodes, Jr., and I. C. Wright for plaintiff.*

*Rountree & Rountree for defendants Shell Union Oil Corporation and Shell Eastern Petroleum Products, Inc.*

CLARKSON, J. This is an action for actionable negligence brought by plaintiff against defendants for alleged injury to him by defendants, in keeping and maintaining at a gasoline or filling station, operated by defendants in Wilmington, N. C., a slick and dangerous place for customers to walk on, by allowing gasoline, oils and greases to drip and spill on the floor and approach to the filling station. Plaintiff alleged that he was seriously injured, without fault on his part, by defendants' negligence in not using due care to keep a safe place to walk on. The defendants Farrow in their answer say that they are the lessees of the filling station and run the business independently of the other defendants. The other defendant, Shell Union Oil Corporation, says that the Shell Eastern Petroleum Products, Inc., has ceased to exist. That the Farrows were operating the filling station under their exclusive control, supervision and management. Defendants set up the plea of contributory negligence.

It is well settled in this jurisdiction that in an action by an employee against an employer who is assured, the employee must actually sustain a loss before an action will lie upon the indemnifying policy taken out by the employer, as this is ordinarily expressly required by the terms of the policy. *Duke v. Children's Commission, Inc.,* 214 N. C., 570 (571).

In the present action plaintiff, who was injured, is a stranger and customer of the filling station, and in no way connected with defendants. He contends that the Farrow defendants are now and have long been employees of the corporate defendants and operated the gasoline or filling station for the corporate defendants. That they handled and distributed Shell gasoline and oils and that "Shell signs" are displayed there.

The question presented: Did the court err in requiring the corporate defendant Shell Union Oil Corporation to produce the policy of liability insurance together with letters and telegrams between said corporate defendant and its liability carrier, calling on the carrier to defend this case, as set forth in the order appealed from, upon the notice and affidavit of record? We think not.

N. C. Code, 1939 (Michie), sec. 900, is as follows: "A party to an action may be examined as a witness at the instance of any adverse party, and for that purpose may be compelled, in the same manner and subject to the same rules of examination as any other witness, to testify, either at the trial or conditionally or upon commission. Where a corporation is a party to the action, this examination may be made of any of its officers or agents."

Section 1823: "The court before which an action is pending, or a judge thereof, may, in their discretion, and upon due notice, order either party to give to the other, within a specific time, an inspection and copy, or permission to take a copy, of any books, papers, and documents in his possession or under his control, containing evidence relating to the merits of the action or of the defense therein. If compliance with the order be refused, the court, on motion, may exclude the paper from being given in evidence, or punish the party refusing, or both."

Section 1824: "The courts have full power, on motion and due notice thereof given, to require the parties to produce books or writings in their possession or control which contain evidence pertinent to the issue, and if a plaintiff shall fail to comply with such order, and shall not satisfactorily account for his failure, the court, on motion, may give the like judgment for the defendant, as in cases of nonsuit; and if a defendant shall fail to comply with such order, and shall not satisfactorily account for his failure, the court, on motion as aforesaid, may give judgment against him by default."

While a "roving commission for the inspection of papers" will not be ordinarily allowed, an application for an order for inspection of writings is sufficiently definite when it refers to papers under the exclusive control of the adverse party, which relate to the immediate issue in controversy, which could not be definitely described, and an order based thereon will

be upheld. *Bell v. Bank,* 196 N. C., 233; *Dunlap v. Guaranty Co.,* 202 N. C., 651.

The notice in this case is bottomed on the fact that a production of the policy of liability insurance in force at the time of the injury, and in possession of the Shell Union Oil Corporation, and the letters and telegrams from the defendant Shell Union Oil Corporation, to the liability carrier calling on it to defend this case, are germane to the issues involved in the action. If the Shell Union Oil Corporation is carrying liability insurance, this is some evidence for the jury to consider that the Shell Union Oil Corporation is interested in the control, supervision and management of the filling station and the Farrows are its agents or partners. The true facts should be known.

In *Davis v. Shipbuilding Co.,* 180 N. C., 74 (76-77), with his usual clarity, *Hoke, J.,* said: "It was chiefly urged for error that the court admitted, over defendant's objection, evidence tending to show that the shipbuilding company had taken out and held indemnity insurance in reference to employees engaged in this work, citing *Clark v. Bonsal,* 157 N. C., 270, in support of the objection. It is true that in *Clark v. Bonsal, supra,* the Court decided that an injured employee could not maintain an action for negligent injury against the insurance company on an indemnity policy as ordinarily drawn, taken out, and held by the employer for his own protection. Applying the principle, it has been held in several such cases that the existence and contents of such policy is not, ordinarily relevant on the question of damages, or on the issue as to negligence, but, in the present case, the defendant was endeavoring to maintain the position that it was not then operating the plant, and the intestate, at the time of the occurrence, was not in their employment. And the fact that the company had taken out and then held indemnity insurance for injuries to their employees was clearly relevant in that issue. The court was careful to restrict the evidence to the purpose indicated, and the exception must be overruled. In this connection it was earnestly insisted that there was error in permitting witnesses to speak of the policies in question when it appeared that they were in writing and not produced. The question chiefly pertinent here was not so much the contents of the policies as the independent fact that such policies were held, but, in any event, the policies not being the subject-matter in dispute between the parties nor their contents directly involved in the issue, they do not come within the rule which excludes parol evidence as to the contents of a written paper or document. *Miles v. Walker,* 179 N. C., 479-484; *Morrison v. Hartley,* 178 N. C., 618." *Keller v. Furniture Co.,* 199 N. C., 413 (416).

In *Perkins v. Rice,* 187 Miss., 28, 72 N. E. Reporter, at p. 323, it is held: "Where, in an action for injuries to plaintiff while seeking to use

an elevator in an apartment building, defendants admitted ownership of the building, but denied that they were in control of the elevator at the time of the accident, evidence that, shortly before the accident, defendants had procured an indemnity insurance policy against loss or damage from accidents arising in operating the elevator, and that such insurance was in force when plaintiff was injured, was admissible to prove that, in renting the apartment, defendants still retained control of the elevator."

In *Biggins v. Wagner* (S. D.), 245 N. W., 385, 85 A. L. R., 776, it is held: "The fact that a defendant in an automobile accident case carried liability insurance may, notwithstanding the incidental prejudice, be shown for its bearing on the issue whether the driver of the automobile was an employee of such defendant or an independent contractor." At p. 784, the annotation is as follows: "If an issue in the case is as to whether the plaintiff was a servant of the defendant or whether he was an independent contractor or servant of an independent contractor, evidence is admissible that the defendant carried indemnity insurance on his employees, including the plaintiff, such evidence having been treated in some cases as having a tendency to negative the independence of the contract, or, in other words, as having a tendency to show that the plaintiff was considered by the defendant as his employee." Twelve states follow this rule, including North Carolina, citing the case of *Davis v. Shipbuilding Co., supra.*

We think the affidavit of plaintiff is sufficient and the facts alleged show that the examination was necessary and material, as it sets forth with particularity the papers or documents essential as evidence to plaintiff's action. *Bell v. Bank, supra.*

The judgment of the court below is

Affirmed.