FRANK DOMAN *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY

(No. 9327)

Submitted September 8, 1942. Decided November 4, 1942.

*J. O. Henson, Stephen Ailes* and *G. K. Kump,* for plaintiff in error.

*J. S. Zimmerman,* for defendant in error.

Rose, Judge:

We have before us by writ of error, the judgment of the Circuit Court of Hampshire County, setting aside a verdict in favor of the defendant in an action of trespass on the case of Frank Doman against The Baltimore and Ohio Railroad Company.

The plaintiff is the owner of a farm of approximately four hundred acres, abutting on the South Branch of the Potomac River, in Hampshire County, about six miles north of the town of Romney, for which he paid five thousand dollars in 1911. Between sixty and seventy acres of this farm are denominated "first bottom" land, which is described as low-lying, or "made", ground, consisting, as we understand, of alluvial deposits from the river. A branch line of The Baltimore and Ohio Railroad Company extends through the farm, and is carried across the river by a bridge about four hundred fifteen feet in length. This

bridge is composed of four spans of steel girders or beams, of approximately equal length, which rest on abutments of masonry at either end of the bridge, and on three stone piers standing in the bed of the stream. In 1936 each of these four spans was also supported by three "bents", which were constructed of upright posts, or beams, of wood, the lower parts of which were protected against the current by wooden cribs filled with rock.

The greatest flood known in the South Branch Valley occurred in 1936. The bridge was wholly submerged and partly washed away. Six of the twelve bents were entirely taken out, including the three between the abutment and first pier on the Doman side of the river. The next three, however, were left intact. Some of the Doman land suffered substantial injury by washing and a more extensive area was strewn with wreckage from the bridge and railroad. An agreement was then made between the railroad company and Doman, by which the drift material was reclaimed, certain land leased for use in connection with the rebuilding of the bridge, and damages to the land adjusted. In the reconstruction of the bridge the remaining six "bents" were removed by cutting them off at low water level and casting the stone from the cribs into the low places of the river bed. Two concrete piers, less in size than the cribs, were then constructed beneath each span of the bridge.

In 1937, and again in 1939, lesser floods occurred in the river from which certain washing of the plaintiff's land resulted, and by which debris from the river was spread over other parts of the surface. For these injuries occurring since the flood of 1936, this action was brought. It is charged that the reconstruction of the bridge caused the main current of the stream to flow more closely to the plaintiff's side of the river, and to wash away parts of his land and to overflow others, whereas formerly the like overflow was cast on the opposite side of the river. It is also charged that the new piers, added to the remnants of the former cribs, increased the obstruction of the river.

The jury, which viewed the land involved, found for the defendant. The court set aside the verdict on the sole

ground that there had been admitted in evidence on behalf of the defendant over plaintiff's objection, a copy of the written agreement of 1936 between Doman and the railroad company, without justifying the non-production of the original.

Preliminary to the discussion of the admissibility of this copy in evidence, it may well be observed that other evidence in the case would have sustained the verdict. In the first place, it does not follow, as a matter of law or fact, that, because the injuries from the later floods came after the rebuilding of the bridge, they were thus proved to have been caused thereby. These injuries followed also the extraordinary flood of 1936, a natural event, and according to defendant's evidence, resulted therefrom. The evidence shows that land of the character here involved in the South Branch Valley is frequently submerged by flood, even where no bridge is involved. The defendant's engineers testify that the clearance beneath the bridge, after the substitution of the eight concrete piers for the twelve cribs or bents, was increased ten per cent. It is not apparent how the six stumps of the former cribs or bents, rising no higher than low water level, could materially increase the obstruction of the river, divert its current in times of flood, or retain drift after the river's surface had reached flood stage. The jury could, therefore, very well have found a verdict for the defendant on the ground alone that the railroad company's act had not caused, or contributed to, the alleged injuries upon which this action is based.

Another serious state of the evidence is also apparent. The plaintiff testified that his damage was three thousand dollars, being the exact amount claimed in the declaration; but he persistently refused even to attempt to break down this amount into items, or elements, or to give any basis for his conclusion. This evidence is competent for such weight as the jury may consider it worth, but is not binding upon the jury. *C. & O. Railway Co.* v. *Allen,* 113 W. Va. 691, 169 S. E. 610; *Clay County Court* v. *Adams,* 109 W. Va. 421, 155 S. E. 174; *Hargreaves* v. *Kimberly,* 26 W. Va. 787, 53 Am. Rep. 121; *Railroad Co.* v. *Foreman,* 24

W. Va. 662. In *McHenry* v. *Parkersburg*, 66 W. Va. 533, 66 S. E. 750, 752, 29 L. R. A. (N. S.) 860, commenting on evidence of this character, Judge Poffenbarger said: "We admit the admissibility of opinion evidence, but insist upon its weakness and upon the necessity of the statement of data to enable the jury and court to test its admissibility, weight and value; and we regard the testimony here discussed as constituting a mere scintilla of evidence, insufficient to sustain a verdict for so large an amount in view of the facts disclosed by the evidence in general." The plaintiff testified that about two acres of land had been washed away, but refused to fix any value thereof; he said certain trees were destroyed, but declined to describe them or to give their number or value; he spoke of holes and gulleys in five acres of other land, but refused to furnish any detailed description thereof, or to estimate the injury to this portion of the land; he declined to give any estimate of the rental value of the acreage involved, or of its value before or after the floods in question; and finally he added significantly, "When anything like that is washed away you value it more than if you were going to sell it". The jury viewed the land claimed to have been so greatly damaged, and what they saw, while not in all respects evidence, did enable them better to understand the testimony given in court. *State* v. *Henry*, 51 W. Va. 283, 41 S. E. 439; *Fox* v. *Baltimore & Ohio Railroad Co.*, 34 W. Va. 466, 12 S. E. 757. The jury could very properly have rejected as preposterous the plaintiff's pretended estimate of three thousand dollars by way of damages, and after having done so, nothing remained of his testimony from which to deduce a correct amount of damages, if, in fact, any were found to be justified.

Plaintiff's other witnesses did not aid him in this regard. Three of them fixed the damages at $2,500.00, $2,000.00, and $1,000.00, respectively, and a fourth made an estimate of three or four hundred dollars an acre. This evidence clearly and conclusively militates against the plaintiff's own higher estimate. Also, in the case of each witness, his evidence had the same absence of basis or ex-

planation that characterized that of the plaintiff. But, most of all, each of these witnesses expressly stated that his estimate of the damage was based, at least in part, on the effect of the flood of 1936, an injury not sued for, or in any way involved, in this action. There was, therefore, not a word of competent evidence as to the *quantum* of damages, except the plaintiff's statement that his damage was the full amount sued for. This palpable exaggeration the jury refused to accept, after which there was nothing on which to base a verdict in favor of the plaintiff.

Then what matters it that a copy, rather than the original of the agreement of 1936 was introduced? Nothing in this instrument in any way went to the plaintiff's right of recovery for damages caused by the floods of 1937 and 1939. Even if, as plaintiff now says, the paper might have tended to reduce the damages to be allowed by the jury, of what importance is that probability? In view of the fact that the jury found he was not entitled to any damages whatever, how could the paper injure the plaintiff's cause by merely tending to reduce his damages? If the introduction of this copy of the agreement was in strictness legally irregular or improper, it clearly appears, in view of the verdict, not to have had any effect to the prejudice of the plaintiff.

But was the introduction of a copy of the 1936 agreement error? If that agreement is considered as "evidence relating to a matter which does not form the foundation of the cause of action or defense", the production of the "best evidence" is not required. 32 C. J. S. Evidence, Section 781, page 706. See also, 20 Am. Jur. Evidence, Section 406, page 367; *Pulsifer* v. *Walker*, 85 N. H. 434, 159 A. 426, 81 A. L. R. 1052; *Morrison* v. *Hartley*, 178 N. C. 618, 101 S. E. 375; *Benson & Co.* v. *Foreman*, 241 Ala. 193, 1 So. 2d 898; *Dillinger* v. *Lee*, 158 Ark. 374, 250 S. W. 332; *Belle City Malleable Iron Co.* v. *Clark*, 172 Minn. 508, 215 N. W. 855; *United States* v. *Aluminum Co. of America*, 35 Fed. Supp. 820.

However, in some respects, this agreement may be considered as more than merely collateral. It marked the time

back of which no damages could be awarded in this action, a question on which most of plaintiff's witnesses were confused. It settled the question whether it covered damages as well as rental for the land and the right to recover salvage material therefrom. Both parties had already introduced considerable evidence as to the contents of the agreement, without any objection whatever. It is undisputed in the evidence that the agreement had been executed in duplicate, and that one original had been delivered to the plaintiff. The utility of the agreement, as evidence, became manifest only late in the trial, and it does not appear that it could have been anticipated earlier. The defendant's original of the agreement was in its offices at Baltimore, Maryland, and, of course, could not have been produced without considerable delay. The plaintiff was called upon to produce his copy of the original, which he did not do, and he raises no question as to the accuracy of the copy introduced. A witness for the defendant, who acted for the company in the preparation and execution of this agreement, testified to the correctness of the copy. We think, therefore, that the admission of the copy of the agreement was within the sound discretion of the court under the peculiar circumstances of this case, and that his discretion has not been abused. We render high deference to the opinion of a trial judge who has set aside a verdict, but we are not bound absolutely thereby. In this case the Judge expressly found that, aside from the admission of this copy of the agreement rather than requiring the production of the original, the case was fairly tried. It would seem that the meticulous concern of the trial judge for the rights of the parties led him to assume too much blame for what he felt to be his own judicial lapse. If error at all, it was perfectly harmless, and did not require him to set aside a verdict, which otherwise he found, and we now find, to be perfectly sound.

The judgment of the Circuit Court of Hampshire County is reversed, the verdict of the jury reinstated, and

judgment will be entered here for the defendant, with costs in this Court and the court below.

> *Judgment reversed; verdict reinstated; judgment entered here.*