[Civ. No. 32084.   Second Dist., Div. Four.   Jan. 15, 1968.]

WILLIAM CHAMBERS DOAK, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ANN BARBARA DOBIESZ et al., Real Parties in Interest.

---

Parker, Stanbury, McGee, Peckham & Garrett, Thomas Waddell and White McGee, Jr., for Petitioner.

No appearance for Respondent.

Fred Miller, John D. Miller and Norvell F. Woods, Jr., for Real Parties in Interest.

Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn, Robert G. Beloud, Leonard Sacks, Ned Good and Ian Herzog as Amici Curiae on behalf of Real Parties in Interest.

McCOY, J. pro tem.*—This is a proceeding for a writ of prohibition restraining the Superior Court for Los Angeles County from enforcing an order requiring petitioner to answer certain interrogatories. The order was made in an action now pending in that court entitled Dobiesz v. Doak, number SO C 13976, in which plaintiffs seek to recover general damages for the wrongful death of their son, allegedly caused by wanton, reckless and negligent acts of the defendant, petitioner here, in the operation of his automobile on August 10, 1966. Upon the issuance of our alternative writ, the real parties in interest filed their answer and a demurrer to the petition as permitted by rule 56, California Rules of Court.

At the taking of his deposition by plaintiffs' attorneys in

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

December 1966, defendant refused to answer several questions. Plaintiffs thereupon noticed a motion pursuant to section 2034, subdivision (a), of the Code of Civil Procedure for an order requiring him, among other things, to answer some 14 questions about his ability to respond in damages, should plaintiffs recover judgment.[1] At the conclusion of the hearing on July 5, 1967, the court made the order here under review. That order reads: "Motion is granted as follows: Such disclosure to be given, to be given at time of deposition re examination in general shall be a limited way; that is, net worth of all real property and net worth of all personal property owned and held by defendant Doak, without inquiring into personal debts, debtors, etc. . . ." The remaining portions of the minute order of that day are not material here, nor are we concerned with the other questions which were the subject of plaintiffs' motion.

The question here is whether, under the law of this state governing discovery in civil actions, a defendant in an action for damages for wrongful death can be required in a pretrial discovery proceeding to answer questions relating to his present financial responsibility and his ability to respond in damages in the event the plaintiffs obtain a judgment against him. Defendant contends that, in making the order requiring him to answer such questions, the trial court exceeded its jurisdiction, in that there is no authority in this state for such discovery. Plaintiffs contend that the answers to such questions "are relevant to the subject matter in a wrongful death action and may be compelled, in the exercise of the broad discretion conferred upon the trial judge, at the defendant's pretrial deposition concerning his financial responsibility: (1) as an aid to pending pretrial settlement negotiations; or (2) as an aid in obtaining satisfaction of any judgment plaintiffs may receive in this action."[2] The question thus raised is one of first impression in this state.

We have concluded that the question before us must be answered in the negative, and that the making of the order here under review constitutes an abuse of the discretion

[1]At the taking of his deposition defendant refused to answer a series of specific questions as to his ownership of any real property, securities, bank accounts, cash and other assets, and refused to state whether he had transferred or otherwise disposed of any assets since the date of the accident.

[2]The record precludes any argument that the information plaintiffs here seek to discover will aid them in any way in the preparation of their case for trial.

vested in the trial court. In reaching this conclusion we are well aware of the rule stated in *Greyhound Corp.* v. *Superior Court*, 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266], that the new discovery act was intended, among other things, "(4) to educate the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements; (5) to expedite litigation; [and] (6) to safeguard against surprise; . . ." We are also mindful of the rule stated in the same case (p. 377) that "In order to accomplish the various legislative purposes set forth above, the several statutes must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial. As we stated in the *Chronicle* case (*supra*, 54 Cal.2d [548] at p. 572 [7 Cal.Rptr. 109, 354 P.2d 637]), 'Only strong public policies weigh against disclosure.' "

The basic question here is whether the information as to the defendant's financial condition here sought by plaintiffs is discoverable under the circumstances of this case. While defendant concedes that plaintiffs may have pretrial discovery with respect to the existence and amount of defendant's public liability insurance under *Laddon* v. *Superior Court*, 167 Cal.App.2d 391 [334 P.2d 638], and *Pettie* v. *Superior Court*, 178 Cal.App.2d 680 [3 Cal.Rptr. 267], he contends that the rule of those cases should not be extended to permit discovery of a defendant's other assets. We agree.

In *Laddon* v. *Superior Court, supra,* an action for general damages for malpractice, it was held that the plaintiff had a discoverable interest in defendant's liability insurance which arises with the very pendency of the action against the assured. The insurance policy, said the court (pp. 395-396), "is relevant to the subject matter involved in the personal injury action, although not strictly within the issues raised by the pleadings." This decision is based in large part on *Demaree* v. *Superior Court*, 10 Cal.2d 99 [73 P.2d 605], and *Superior Ins. Co.* v. *Superior Court*, 37 Cal.2d 749 [235 P.2d 833], in which the court held that the plaintiff in a personal injury action is entitled, in a collateral proceeding to perpetuate testimony, to examine defendant's public liability insurance policy.

Petitioner in *Pettie* v. *Superior Court*, 178 Cal.App.2d 680 [3 Cal.Rptr. 267], was the plaintiff in an action for general damages for personal injuries allegedly caused by the negligence of the defendant in the operation of his automobile. The

decision in that case that plaintiff was entitled to pretrial discovery of information concerning defendant's public liability insurance, is based primarily on *Demaree, Superior Insurance* and *Laddon.*

These cases are significant here in several respects. In the first place, as pointed out in *Pettie* (pp. 684-685), the holdings in all four cases are based essentially on the determination "that, under Insurance Code, section 11580,[3] a contractual relation is created between the insurer under an automobile liability policy and third persons who may be negligently injured by the insured; that the provisions of such a policy are not, therefore, a matter for the sole knowledge of the named assured to the exclusion of the injured person; and that '*the very pendency of an action by the injured person brought in good faith against the named insured person gives the former a discoverable interest in the policy.*' (Italics ours.) (*Superior Ins. Co.* v. *Superior Court, supra,* at p. 754.)" It is clear, said the court (p. 686), "that inquiry as to the existence and policy limits of liability insurance was primarily permitted under former sections 2083-2090, Code of Civil Procedure, upon the grounds that Insurance Code, section 11580, created a contractual relation between the insurer under a liability insurance policy and third persons who are negligently injured by the assured, and that plaintiff in a personal injury action has a discoverable interest in defendant's liability insurance which arises with the pendency of the action against the assured."

It was also held in *Pettie* (p. 687), that, "In view of the statutory and case law in California establishing that a contractual relation exists between the insurer and such a person as petitioner herein and that petitioner has a discoverable interest in the assured's liability insurance arising with the very pendency of his personal injury action against the assured, we are of opinion that, in this state, the matter of liability policy limits is clearly relevant to the *subject matter* involved in petitioner's pending personal injury action against the assured."

Finally, in deciding the *Pettie* case (pp. 688-689), the court

---

[3]Insurance Code, section 11580, provides in part that a policy of liability insurance shall contain a provision "Against loss or damage resulting from liability for injury suffered by another . . ." and "A provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy . . . to recover on the judgment."

was ''not persuaded that there is any substantial reason for not allowing such discovery to be had in the pending personal injury action against the assured. It being the established public policy in California that the provisions of a liability insurance policy are not a matter for the sole knowledge of the name assured and the insurance carrier to the exclusion of the injured person, it may well follow that the revelation of the liability limits of such insurance policy will tend to promote the efficacious disposition of negligence litigation by settlement or by trial.'' This is so, said the court (p. 689) in view of the primary purpose of pretrial discovery ''to further the efficient, economical disposition of cases according to right and justice on the merits,'' and '' 'the policy of the law to discourage litigation and to favor compromises of doubtful rights and controversies, made either in or out of court.' ''[4]

Plaintiffs would have us hold under the rationale of these cases that they should be permitted pretrial discovery with respect to the financial condition of the defendant here on two grounds: first, that knowledge of the defendant's financial condition would lead to more purposeful discussions of settlement, and thereby effectuate the dispatch of court business; and second, that evidence of financial responsibility of a defendant is admissible in a case alleging a cause of action for punitive damages and the wanton and reckless misconduct of defendant and that this may be such a case.

■ Pretrial discovery of any factual information which will tend to the efficacious disposition of the pending litigation by settlement or by trial should be encouraged. Such discovery depends in the first instance on whether the information is relevant to the subject matter of the litigation. (Code Civ. Proc., § 2016, subd. (b); *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 389-390 [15 Cal.Rptr. 90, 364 P.2d 266].) But relevance to the subject matter of the litigation is not always enough to require discovery.

Plaintiffs are not here seeking information which is in any way necessary to prove their claim for damages or which is relevant to any defense to the action, as permitted by section 2016, subdivision (b), of the Code of Civil Procedure. Nor are they seeking information which they are entitled to discover as third party beneficiaries of defendant's contract with his

---

[4]In *Rolf Homes, Inc.* v. *Superior Court,* 186 Cal.App.2d 876 [9 Cal. Rptr. 142], it was held on the authority of *Pettie* v. *Superior Court,* 178 Cal.App.2d 680 [3 Cal.Rptr. 267], and the cases there discussed, that information concerning malpractice insurance for civil engineers is discoverable on deposition.

insurance carrier. On the contrary, they are seeking information which relates only to defendant's financial condition and assets other than his liability insurance. In effect they are seeking to invade defendant's privacy by compelling him to disclose information which may well be contained in his private books, papers and accounts.

We assume for the purpose of this decision that the information sought by plaintiffs is relevant to the subject matter of the pending litigation. (Cf. *Pettie* v. *Superior Court*, 178 Cal.App.2d 680 [3 Cal.Rptr. 267].) Notwithstanding that assumption, however, we are satisfied that to allow discovery of that information would be an abuse of the inherent rights of the defendant and contrary to well established public policies.

### Discovery Relating to Defendant's Assets

As we have pointed out above, the holding in *Pettie* v. *Superior Court, supra,* 178 Cal.App.2d at page 687, that the matter of a defendant's public liability insurance is "clearly relevant to the *subject matter* involved" in the pending litigation, was based on the contractual rights of the parties to the action arising out of section 11580 of the Insurance Code. The court was careful, however, to note that a distinction should be made between a liability policy and a defendant's other assets. As the court there said (p. 689) quoting with approval from *People* ex rel. *Terry* v. *Fisher,* 12 Ill.2d 231 [145 N.E.2d 588] : " 'Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value.' "[5]

We agree, of course, as the court said in *People* ex rel. *Terry* v. *Fisher, supra* (145 N.E.2d, at p. 593), that " 'Litigation is a practical business. The litigant sues to recover money and is not interested in a paper judgment that cannot be collected.' " Obviously this is true in all tort litigation. It

[5]The same distinction is noted in *Johanek* v. *Aberle* (D. Mont.) 27 F.R.D. 272, 278, also on the authority of *People* ex rel. *Terry* v. *Fisher,* 12 Ill.2d 231 [145 N.E.2d 588, 592]. In *Johanek,* as in *Pettie* v. *Superior Court,* 178 Cal.App.2d 680 [3 Cal.Rptr. 267], on which the court relies, it was held that the plaintiff in action for damages for personal injury is entitled to pretrial discovery with respect to defendant's liability insurance in force at the time of the accident in view of the motorists financial responsibility law of Montana and the provisions of the standard automobile liability insurance policy used by most insurance companies. However, said the court (pp. 278-279), "It does not necessarily follow that to permit discovery as to insurance coverage would require similar discovery as to other assets of the insured."

may also be true in all such cases that the existence of a defendant's assets other than his liability policy could be the controlling factor in determining the possibility of compromise or the manner in which a case is to be tried. It does not follow that a plaintiff in an ordinary action for damages for personal injuries or wrongful death allegedly caused by the negligence of the defendant should have the right to compel discovery with respect to such other assets.

In a discovery proceeding such as this in which defendant's liability is in issue, there is a meaningful distinction between the liability insurance of the defendant and his other assets. A public liability insurance policy in force at the time of the tort establishes a special fund to which the injured party may look for the payment of his claim when the defendant's liability has been legally established by a judgment against him. (Ins. Code, §§ 11580, 11580.1.) That fund cannot be dissipated or destroyed by defendant during the pendency of the action. This is not true with respect to defendant's other assets. Unlike defendant's liability insurance, the net dollar value of his other assets, real and personal, before his liability has been established by judgment, is not the measure of the collectibility of any judgment which may be entered against him. Whether such a judgment can be collected depends on the nature of his assets at and after the time the judgment is entered. Since the law does not require a potential judgment debtor in a tort action to maintain his assets intact from the date of the tort to the date of the judgment establishing his liability, it may well be that, through circumstances beyond his control, the defendant may not own any assets at the time he becomes a judgment debtor. This, of course, is a normal hazard of all tort litigation. To require the pretrial disclosure of a defendant's assets to the plaintiff, even as an aid to settlement and subject to a protective order against disclosure to others, would be a serious invasion of privacy. The threat of having to place a dollar value on one's assets and to disclose that valuation to strangers, may well serve as a powerful weapon to coerce a settlement which is not warranted by the facts of the case. In our opinion, the pretrial disclosure of such information would be contrary to the public interest and would not be consistent with the policy of the law.

While it is true, as we have seen, that it is the established public policy of this state to permit pretrial discovery with respect to a defendant's public liability insurance policy, there is no comparable public policy favoring discovery with

respect to a defendant's other assets before a judgment has been entered against him.

In support of their contention that the discovery they here seek is proper, plaintiffs rely strongly on the rule "that the relationship of debtor and creditor arises in tort cases the moment the cause of action accrues." (*Hansen* v. *Cramer*, 39 Cal.2d 321, 323 [245 P.2d 1059, 30 A.L.R.2d 1204]; *Freeman* v. *La Morte*, 148 Cal.App.2d 670, 675 [307 P.2d 734]; *Malaquias* v. *Novo*, 59 Cal.App.2d 225, 230-231 [138 P.2d 729].) Plaintiffs contend that this relationship is comparable to the relationship between the parties under section 11580 of the Insurance Code, and establishes a present interest in the financial responsibility of the defendant which is sufficient to authorize pretrial discovery with respect thereto.

This argument is not tenable. The cases cited by plaintiffs on this point are readily distinguishable from the case before us, in that all of them relate to fraudulent conveyances. In such cases a debtor "is one who, by reason of an existing obligation, is or may become liable to pay money to another, whether such liability is certain or contingent," while a creditor "is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money." (Civ. Code, §§ 3429, 3430.) Plaintiffs here do not claim that there has been any fraudulent conveyance by defendant.

No case in this state has come to our attention holding, or even suggesting, that, in the absence of some contractual relationship such as that created by section 11580 of the Insurance Code, the plaintiff in an action for damages for personal injuries or wrongful death has a discoverable interest in the defendant's other assets before his claim has been reduced to judgment merely by reason of the fact that the claim has been asserted. On the contrary, sections 714 to 719 of the Code of Civil Procedure clearly indicate the established policy of this state that such discovery can only be had after the defendant becomes a judgment debtor.[6] The supplementary proceedings

---

[6]"Under our code, proceedings supplementary to execution, by which a judgment debtor is required to appear before the Court or a referee to answer concerning his property, are but a substitute for a creditor's bill at common law. It is only a summary method of purging the debtor's conscience and compelling the disclosure of any property he may have which is subject to the execution. The proceeding was intended to be summary and effectual, and affords the widest scope for inquiry concerning the property and business affairs of the judgment debtor." (*Mc-Cullough* v. *Clark*, 41 Cal. 298, 302.)

provided by those sections "are designed to provide a summary method to discover assets of a judgment debtor and subject them to the satisfaction of a judgment," and such proceedings are not applicable unless and until a judgment against the defendant has been entered. (*In re Finn*, 155 Cal. App.2d 705, 709 [318 P.2d 816].)

It is significant that the Legislature has not provided for any similar examination of a defendant before a judgment is entered against him.

Plaintiffs have cited *Jeppesen* v. *Swanson* (1955) 243 Minn. 547 [68 N.W.2d 649, 658], in support of their contention that there can be no distinction between the granting of discovery as to policy limits and discovery of other assets establishing the financial responsibility of the defendant. They fail to point out, however, that the court there held only that where such information is sought "for the sole purpose of evaluating a case for the purpose of determining whether it would be advisable to settle, it is not discoverable. . . ." In our opinion, neither that case, nor any of the other cases from other jurisdictions cited by plaintiffs on this point is persuasive.

### Punitive Damages Not Recoverable
### In Action for Damages for Wrongful Death

We turn now to plaintiffs' contention that information with respect to the assets of the defendant other than his public liability insurance is discoverable before the trial because it is relevant to the subject matter of an action for damages for wrongful death allegedly caused by the wanton and reckless misconduct of the defendant. "It may be," say the plaintiffs, "that such an allegation will support in the State of California an award of punitive damages. If so, an allegation of a cause of action for punitive damages by amendment to plaintiffs' Complaint is a potential issue justifying discovery of defendant's financial responsibility."[7] We find no merit in plaintiffs' contention.

It is plaintiffs' theory that their ultimate right to an award of punitive damages is a potential issue in the case, and that, if warranted by the facts they seek to discover with respect to defendant's financial condition, they will seek to amend their complaint to raise that issue. Based on this theory, they con-

---

[7] We note here that, although plaintiffs allege that the death of their son was caused by reckless and wanton misconduct of defendant, they do not pray for a judgment awarding punitive damages. The question of their possible right to recover punitive damages was not raised in the trial court until the time of the proceedings which resulted in the order here under review.

tend that they are entitled to pretrial discovery of such facts under the rules laid down in *McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944], and *Tatkin* v. *Superior Court*, 160 Cal.App.2d 745, 750 [326 P.2d 201]. This theory is necessarily based on the assumption that an award of punitive or exemplary damages is permissible in an action under section 377 of the Code of Civil Procedure for wrongful death. That assumption is not valid.

Admittedly, in any case in which an award of punitive or exemplary damages is authorized by law (Civ. Code, § 3294), evidence regarding the defendant's financial condition is admissible at the trial and is a proper subject of pretrial discovery since it is relevant to the subject matter of the action. (*Coy* v. *Superior Court*, 58 Cal.2d 210, 222-224 [23 Cal.Rptr. 393, 373 P.2d 457].)[8] This is not such a case.

The only authority relied on by plaintiffs in support of their contention is the statement in *Donnelly* v. *Southern Pac. Co.* (1941) 18 Cal.2d 863 at pages 869-870 [118 P.2d 465], that ''Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct. Thus, it justifies an award of punitive damages, and contributory negligence by the plaintiff is not a defense. (See cases cited in Prosser, Torts, p. 261.)'' As we read the whole opinion in that case the statement just quoted is no more than dictum and it is not determinative of the question here. It is enough to note that the court was there concerned only with the distinctions between ordinary or gross negligence and willful and reckless misconduct. The reference to Prosser on Torts (1st ed., p. 261) bears only on this distinction and has no bearing on the right to recover punitive damages.[9] The question of whether punitive damages could be awarded in an action for damages for wrongful death against a defendant guilty of willful, wanton or reckless misconduct, was not there involved.

Whatever the law may be in other jurisdictions (see Anno.

---

[8]Similarly, information as to the financial condition of a corporate defendant is admissible and discoverable before trial in an action involving an *alter ego* issue. (*Flora Crane Service, Inc.* v. *Superior Court*, 234 Cal.App.2d 767, 778-779 [45 Cal.Rptr. 79].)

[9]With reference to the right to recover punitive damages in tort actions where the defendant's conduct is something more than the mere commission of a tort, see Prosser, Torts (1st ed. 1941) § 2, pp. 11-13, and Prosser, Torts (3d ed. 1964), § 2, pp. 9-14. It is significant that no California case is here cited holding that punitive damages are recoverable by plaintiff in such a case. The few California decisions cited by Prosser have no bearing on the point here in issue.

—Punitive Damages in Death Actions, 94 A.L.R. 384), it has long been settled in this state that exemplary or punitive damages are not recoverable in an action for wrongful death, whether the death was caused by the negligence of the defendant or by his wanton and willful misconduct.

"The measure of damages for causing the death of another depends upon the interpretation of the statute which creates the right of action." (Rest., Torts, § 925, p. 638.) At one time the statute law of this state expressly permitted recovery of "pecuniary and exemplary" damages in wrongful death actions. (Stats. 1862, p. 447; *Myers* v. *City & County of San Francisco,* 42 Cal. 215.) Section 377 of the Code of Civil Procedure as adopted in 1872 also permitted an award of "pecuniary and exemplary" damages in such cases. This provision was deleted, however, when section 377 was amended in 1874 and has not been restored since then.[10]

In *Munro* v. *Pacific Coast Dredging etc. Co.* (1890) 84 Cal. 515, 520-523 [24 P. 303, 18 Am.St.Rep. 248], the court set forth at length the circumstances to be considered in awarding damages in an action for wrongful death under section 377 of the Code of Civil Procedure. This case is cited with approval in *Lange* v. *Schoettler* (1896) 115 Cal. 388 [47 P. 139], where the question here involved was squarely before the court.

In *Lange* v. *Schoettler, supra* (pp. 390-391), it was held that the trial court erroneously instructed the jury "that they could allow exemplary damages if the act causing the death was wanton, cruel, and malicious." It has been uniformly held, said the court, "that the action provided for in section [377] of the Code of Civil Procedure, is a new action and not the action which the deceased might have brought for the wrong had he survived. Only such damages can be recovered as the statute authorizes, and, in the absence of an express provision authorizing a different rule, the only damage allowed is the probable value of the life to those in whose behalf the action is brought. Of course, this cannot include any grievance personal to the deceased, or any damage allowed in the interest of the people as punishment." With reference to the 1874 amendment to section 377 striking out the words "pecuniary and exemplary" the court said (pp. 391-392) : "The purpose of this amendment must have been to

[10]As amended in 1949, section 377 reads in part: "In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 956 of the Civil Code."

take away the right to exemplary damages, and make the rule accord with the general rule elsewhere.'' After referring to *Munro* v. *Pacific Coast Dredging etc. Co.*, 84 Cal. 515 [24 P. 303, 18 Am.St.Rep. 248], the court concluded its discussion on this point as follows (pp. 392-393) : ''No case has been cited under a statute such as ours in which exemplary damages have ever been claimed. The nearest to it are those cases in which it has been contended that a recovery could be had for the pain and suffering caused the deceased. The ruling has uniformly been against such a claim. The grievance to be redressed is that of the relatives, not of the deceased.''

The rules laid down in *Munro* and *Lange* have been consistently followed in all the later cases. (See *Fox* v. *Oakland Consol. St. Ry. Co.*, 118 Cal. 55 [50 P. 25, 62 Am.St.Rep. 216] ; *Powers* v. *Sutherland Auto Stage Co.*, 190 Cal. 487 [213 P. 494] ; *Amore* v. *Di Resta*, 125 Cal.App. 410 [13 P.2d 986]. See also *Gombos* v. *Ashe*, 158 Cal.App.2d 517 [322 P.2d 933], holding that punitive damages cannot be recovered in a personal injury action even though it is pleaded that defendant acted ''wilfully.'' ''wrongfully,'' ''recklessly'' and ''unlawfully.'') As Justice Spence said in *Amore* v. *Di Resta, supra* (pp. 414-415), the words '' 'all the circumstances' '' as used in section 377 ''have reference only to the circumstances bearing upon the damage sustained by plaintiffs such as the age of the deceased, his earning power, his probable expectancy, the relationship and extent of dependency of his heirs and so forth and have no reference to the circumstances surrounding the killing. To hold otherwise would mean that an award of damages in a death case might be made to include exemplary damages if the circumstances surrounding the killing were such as to incline the jury to award such damages. The history of said section 377 negatives the propriety of a construction which would permit such an award.''[11]

In view of these authorities we can only conclude that the right of plaintiffs to recover punitive damages in the case before us is not and cannot be a ''potential issue'' within the meaning of *McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944]. and *Tatkin* v. *Superior Court*, 160 Cal.App.2d 745, 750-752 [326 P.2d 201].[12]

---

[11]It is regrettable that neither plaintiffs nor defendants called to our attention or to the attention of the trial court the history of section 377 of the Code of Civil Procedure outlined above. It would have saved both courts much time had they done so.

[12]*Toole* v. *Richardson-Merrell, Inc.*, 251 Cal.App.2d 689 [60 Cal. Rptr. 398], cited by plaintiffs, is readily distinguishable on the facts and has no bearing on the issue before us.

We have considered all the several tangential points discussed by plaintiffs in their extensive brief in opposition to the petition and have concluded that none of them require any comment here.

We hold that, in this action for damages for wrongful death allegedly caused by the willful, reckless and negligent conduct of the defendant, pretrial discovery with respect to the financial condition of the defendant and his assets other than his public liability insurance is not permissible under the provisions of section 2016, subdivision (b), of the Code of Civil Procedure. To hold otherwise would open a Pandora's Box, which we must decline to do.

The demurrer to the petition for a writ of prohibition is overruled.

Let a writ of prohibition issue commanding the respondent court to refrain from enforcing that part of its order of July 5, 1967, which requires the petitioner to answer the questions of the real parties in interest relating to petitioner's financial condition and to his assets other than his public liability insurance, upon the resumption of petitioner's deposition.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied January 30, 1968, and the petition of the real parties in interest for a hearing by the Supreme Court was denied March 13, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.