JAMES L. MARKS, JR. v. LELLA S. THOMPSON

No. 9

(Filed 15 November 1972)

1. **Rules of Civil Procedure § 26— discovery of insurance — legal right**
   The 1971 amendment to G.S. 1A-1, Rule 26(b), confers upon a party the legal right to obtain discovery of the existence and contents of insurance agreements referred to therein; and when a party elects to exercise such right, the discretionary authority conferred upon the judge by G. S. 1A-1, Rule 30(b) and (d), relates only to the time, place and circumstances of such discovery.

2. **Rules of Civil Procedure § 26— discovery of insurance — validity of enactment**

The 1971 amendment to Rule 26(b) allowing the discovery of the existence and contents of insurance agreements is a valid exercise of legislative authority and does not violate any rights guaranteed by Article I, Section 1 and Article I, Section 19 of the North Carolina Constitution.

3. **Rules of Civil Procedure § 26; Privacy— discovery of automobile liability insurance — not invasion of privacy**

The enforced discovery of automobile liability insurance as authorized by the 1971 amendment to Rule 26(b) is not an unwarranted invasion of privacy.

APPEAL by defendant under G.S. 7A-30(1) and (2) from the decision of the Court of Appeals which affirmed an order entered by *Brewer, J.,* at the Regular August Civil Session, 1971, of WAKE Superior Court.

Plaintiff's claim and defendant's counterclaim grow out of a collision on 29 January 1969 between automobiles owned and operated by them. The pleadings raise issues of negligence, contributory negligence and damages. Plaintiff seeks to recover $750,000 on account of personal injuries. Defendant seeks to recover $600 on account of damage to her car.

On 15 July 1971, pursuant to Rules 33 and 26, plaintiff requested defendant to answer the following interrogatories:

"1. Were you insured by a policy of automobile liability insurance on January 29, 1969?

"2. If so, state the name of the insurance carrier, the policy number, the effective dates, and the amounts of coverage."

On 28 July 1971, defendant, through her counsel, moved "under Rule 33, Rule 31(d), and Rule 30(b) of the North Carolina Rules of Civil Procedure for a protective order suppressing or, in the alternative, limiting the scope of the inquiry by plaintiff . . . and protecting the defendant from unreasonable annoyance, embarrassment, expense and oppression. . . . " Defendant set forth with particularity the grounds on which she based her objections to and motion to suppress the interrogatories.

Judge Brewer overruled defendant's objections and ordered "that the defendant fully answer the said interrogatories within ten (10) days of the date of this Order."

The Court of Appeals affirmed. 14 N.C. App. 272, 188 S.E. 2d 22. One member of the hearing panel dissented.

*Maupin, Taylor & Ellis by William W. Taylor, Jr.; and Purrington & Purrington by A. L. Purrington, Jr., for defendant appellant.*

*Herman Wolff, Jr.; and Yarborough, Blanchard, Tucker & Denson by Charles F. Blanchard for plaintiff appellee.*

BOBBITT, Chief Justice.

The Rules of Civil Procedure, G.S. 1A-1, went into effect on 1 January 1970. All provisions of Rule 26(b), prior to the 1971 amendment, are quoted below.

"(b) *Scope of examination.*—Unless otherwise ordered by the judge as provided by Rule 30 (b) or (d), the deponent may be examined [regarding any matter, not privileged, which is relevant to the subject matter (involved) in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence] nor is it ground for objection that the examining party has knowledge of the matters as to which testimony is sought. But the deponent shall not be required to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless the judge otherwise orders on the ground that a denial of production or inspection will result in an injustice or undue hardship; but, in no event shall the deponent be required to produce or submit for inspection any part of a writing which reflects an attorney's mental impressions, conclusions, opinions or legal theories, or except as provided in Rule 35, the conclusions of an expert."

Chapter 750, Session Laws of 1971, entitled "An Act to Allow Discovery of Insurance Information in Negligence Actions," became effective upon its ratification on 5 July 1971.

Marks v. Thompson

This 1971 Act amended Rule 26(b) by adding a second (unnumbered) paragraph at the end thereof. The added paragraph is quoted below.

"*Insurance Agreements.*—A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement."

The provisions of the portion of our Rule 26(b) shown above within brackets were identical with all provisions of Rule 26(b) of the Federal Rules of Civil Procedure prior to the 1970 amendment of Federal Rule 26(b), except that our Rule 26(b) did not contain the word "involved" shown in parentheses. Fed. R. Civ. P. 26(b), 28 U.S.C.A. (1958).

Federal decisions based on Federal Rule 26(b) prior to the 1970 amendment, and decisions based on similar state rules of procedure, were in conflict as to whether the facts relating to the existence and amount of automobile liability insurance were "relevant to the subject matter in the pending action" and proper subject of inquiry in discovery proceedings. Decisions tending to support their respective positions are cited in the majority and dissenting opinions in the four to three decision of the Supreme Court of Nebraska in *Mecke v. Bahr*, 177 Neb. 584, 129 N.W. 2d 573 (1964). In holding that the defendant's objections to the plaintiff's interrogatories should have been sustained, the majority opinion took the view that "[t]he subject matter is the charge of negligence against the defendant which caused the injury to the plaintiff," and that disclosure was not required unless the evidence sought was relevant to a determination of the issues raised by the pleadings. *Id.* at 589, 129 N.W. 2d at 577. The dissenting opinion took the view that "[t]he term 'subject matter' of an action embrace[d] a much broader range of discovery than 'admissible evidence' as to liability issues only," and included facts relevant to the disposition of litigation through settlement negotiations. *Id.* at 592, 129 N.W. 2d at 578. For other decisions and commentaries pertinent to the conflicting views, see 8 C. Wright

& A. Miller, Federal Practice and Procedure, § 2010. (1970) ; Fournier, *Pre-Trial Discovery of Insurance Coverage and Limits,* 28 Ford. L. Rev. 215 (1959) ; Jenkins, *Discovery of Automobile Insurance Limits: Quillets of the Law,* 14 Kan. L. Rev. 59 (1965) ; Williams, *Discovery of Dollar Limits in Liability Policies in Automobile Tort Cases,* 10 Ala. L. Rev. 355 (1958) ; Comment, *Discovery of Insurance Coverage: Hazy Frontier of the Discovery Process,* 35 Tenn. L. Rev. 35 (1967) ; Note, 45 N.C.L. Rev. 492 (1967) ; Annot. 13 A.L.R. 3d 822 (1967).

In 1970 the controversy in the federal courts was settled when amendments to certain of the Federal Rules, including the amendment of Rule 26(b) to permit discovery of insurance agreements, were adopted by the Supreme Court of the United States and transmitted to Congress on 30 March 1970, in accordance with 28 U.S.C.A. § 2072. These amendments went into effect on 1 July 1970. 398 U.S. 978-79. Mr. Justice Black and Mr. Justice Douglas disapproved "of the Amendments to the Federal Rules of Civil Procedure relating to Discovery" and dissented "from the action of the Court in transmitting them to the Congress." *Id.* at 979.

The pertinent portions of Federal Rule 26(b) as amended in 1970 are quoted below.

"(b) *Scope of discovery.*—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) *In general.*—Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"(2) *Insurance agreements.*—A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business

may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement." Fed. R. Civ. P. 26(b); 398 U.S. at 982-83.

In proposing the 1970 amendments to the Federal Rules, the Advisory Committee stated: "New provisions are made and existing provisions changed affecting the scope of discovery: (1) The contents of insurance policies are made discoverable (Rule 26(b)(2))." 48 F.R.D. 487.

After discussing and citing decisions and articles pertinent to the above conflict concerning Rule 26(b), the Advisory Committee included in its explanation of the proposed amendment the following:

"The amendment resolves this issue in favor of disclosure. Most of the decisions denying discovery, some explicitly, reason from the text of Rule 26(b) that it permits discovery only of matters which will be admissible in evidence or appear reasonably calculated to lead to such evidence; they avoid considerations of policy, regarding them as foreclosed. See *Bisserier v. Manning, supra.* [207 F. Supp. 476 (D.N.J. 1962).] Some note also that facts about a defendant's financial status are not discoverable as such, prior to judgment with execution unsatisfied, and fear that, if courts hold insurance coverage discoverable, they must extend the principle to other aspects of the defendant's financial status. The cases favoring disclosure rely heavily on the practical significance of insurance in the decisions lawyers make about settlement and trial preparation. In *Clauss v. Danker*, 264 F. Supp. 246 (S.D.N.Y. 1967), the court held that the rules forbid disclosure but called for an amendment to permit it.

"Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect. The amendment is limited to insurance coverage, which should be distinguished from any other facts

concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy." 48 F.R.D. at 488-89.

Since the wording of the 1971 amendment of our Rule 26(b) and that of the 1970 amendment to Federal Rule 26(b) are identical, the only reasonable inference is that they were adopted for the same reasons and were intended to accomplish the same result.

The 1970 amendment to Federal Rule 26(b) relating to "Insurance Agreements" is now a separate paragraph designated Rule 26(b)(2). This resulted from a "Rearrangement of Rules" proposed by the Advisory Committee and adopted by the United States Supreme Court. See 48 F.R.D. at 491. Defendant undertakes to distinguish the 1971 amendment to our Rule 26(b) from the 1970 amendment to Federal Rule 26(b). No rearrangement of the several paragraphs of our Rule 26 was effected by the 1971 amendment. The 1971 amendment simply added to our Rule 26(b) a new paragraph which made specific provision for discovery of the facts relating to "Insurance Agreements."

Based on the indicated differences in respect of *the positions* of the amendments concerning "Insurance Agreements," defendant contends that, unlike the amended Federal Rule 26(b)(2), the limitations that the information must be *relevant* and *not privileged* continue to apply to "Insurance Agreements" under our amended Rule 26(b). She quotes the following from the opinion of Justice Sharp in *Sutton v. Duke*, 277 N.C. 94, 101, 176 S.E. 2d 161, 165 (1970): "All changes *in words and phrasing* in a statute adopted from another state or country will be presumed deliberately made with the purpose to limit, qualify, or enlarge the adopted rule." (Our italics.) However, since the provisions in respect of "Insurance Agreements" of the 1970 amendment to Federal Rule 26(b) and those of the 1971 amendment to our Rule 26(b) are identical, the rule stated in the quotation from *Sutton v. Duke, supra,* is inapplicable.

We note that prior to the adoption of the 1971 amendment to our Rule 26(b) evidence of the existence and contents of a

liability insurance policy, although not ordinarily relevant to issues of negligence and damages, was admissible when pertinent to an issue of ownership or employment. *Isley v. Winfrey*, 221 N.C. 33, 18 S.E. 2d 702 (1942); *Rivenbark v. Oil Corp.*, 217 N.C. 592, 8 S.E. 2d 919 (1940); *Davis v. Shipbuilding Co.*, 180 N.C. 74, 104 S.E. 82 (1920).

As indicated above, the 1971 Act amending Rule 26(b) is entitled "An Act to Allow Discovery of Insurance Information in Negligence Actions." This caption confirms the view expressed above, namely, that the sole purpose of the 1971 Act was to permit discovery of the existence and contents of insurance agreements. With reference to consideration of the caption, see *Sykes v. Clayton, Comr. of Revenue*, 274 N.C. 398, 406, 163 S.E. 2d 775, 781 (1968), and cases cited.

The 1971 amendment to Rule 26(b), which confers this right of discovery, also provides that "[i]nformation concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial." The obvious purpose is to enable the parties to conduct settlement negotiations realistically, that is, with equal knowledge of the true facts as to liability insurance coverage.

[1] We hold that the 1971 amendment to Rule 26(b) confers upon a party *the legal right* to obtain discovery of the existence and contents of insurance agreements referred to therein. When a party elects to exercise this legal right, the discretionary authority conferred upon the judge by Rule 30(b) and (d) relates only to the time, place and circumstances of such discovery.

[2] There remains for consideration whether the 1971 amendment to Rule 26(b) as interpreted herein exceeds the legislative discretion and power of the General Assembly.

In paragraph 6 of her "Objections to and Motion to Suppress Interrogatories," defendant asserts that the 1971 amendment to our Rule 26(b) "is contrary and repugnant to the Constitution of North Carolina, and, especially, Article I, Section 1, and Article I, Section 19, thereof," and then sets forth in subparagraphs (a), (b), (c), (d), (e), (f) and (g) the particulars in which she contends her constitutional rights would be violated.

It is noted that the 1970 amendment to Federal Rule 26 (b) bears the imprimatur of the Supreme Court of the United States. Presumably, this accounts for defendant's failure to cite and rely on any provision of the Constitution of the United States.

Article I, Section 1, of the Constitution of North Carolina, provides: *"The equality and rights of persons. We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."*

Article I, Section 19, of the Constitution of North Carolina, provides: *"Law of the land; equal protection of the laws. No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."*

Upon these quoted provisions defendant bases her contentions that the 1971 amendment to Rule 26 (b) (a) constitutes an unconstitutional invasion of defendant's right of privacy; (b) deprives her of property without due process of law; (c) authorizes an unreasonable search and seizure of her property; (d) constitutes a denial of her right to equal protection of the law; (e) impairs her right to contract and impairs the obligations of her contract; (f) is unduly prejudicial to the public interest; (g) is inconsistent with fundamental principles of liberty and justice, rendering defendant's bargaining position subservient to that of plaintiff's.

Preliminary to consideration of the contentions of defendant in respect of the asserted denial of her constitutional rights, two familiar and well settled principles are noted: (1) "[A] doctrine firmly established in the law is that a State Constitution is in no matter a grant of power. All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it." *Lassiter v. Board of Elections,* 248 N.C. 102, 112, 102 S.E. 2d 853, 861 (1958). (2) "The presumption is that an act passed by the Legislature is constitutional, and it must be so held by the courts unless it appears to be in conflict with some constitutional provision. [Citations omit-

ted.] The legislative department is the judge, within reasonable limits, of what the public welfare requires, and the wisdom of its enactments is not the concern of the courts. As to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts—it is a political question. The mere expediency of legislation is a matter for the Legislature, when it is acting entirely within constitutional limitations, but whether it is so acting is a matter for the courts. [Citations omitted.]" *State v. Warren,* 252 N.C. 690, 696, 114 S.E. 2d 660, 666 (1960).

Prior to the 1970 amendment to Federal Rule 26 (b), the outcome of federal and state decisions involving discovery of the existence and contents of insurance agreements depended upon whether the court adopted the broad or the narrow interpretation of the term "subject matter." In the greater number of these decisions, the opinion contains no reference to whether a rule providing for such discovery would violate any constitutional right of a party required to make such disclosure. However, in a few of these decisions the opinion refers to contentions substantially the same as those now asserted by defendant. In upholding the right of discovery, the following cases dismissed as unsubstantial contentions asserting the unconstitutionality of compulsory discovery. *Superior Ins. Co. v. Superior Court,* 37 Cal. 2d 749, 235 P. 2d 833 (1951) ; *Demaree v. Superior Court,* 10 Cal. 2d 99, 73 P. 2d 605 (1937) ; *Lucas v. District Court,* 140 Colo. 510, 345 P. 2d 1064 (1959) ; *Monier v. Chamberlain,* 31 Ill. 2d 400, 202 N.E. 2d 15 (1964) ; *People ex rel. Terry v. Fisher,* 12 Ill. 2d 231, 145 N.E. 2d 588 (1957). See also, Jenkins, *Discovery of Automobile Insurance Limits: Quillets of the Law,* 14 Kan. L. Rev. 59 (1965) ; Note, *Discovery—Privilege, Relevancy, and Constitutionality in the Discovery of Automobile Liability Insurance Under the Federal Rules,* 34 Notre Dame Law. 78 (1958) ; Comment, *Discovery of Insurance Coverage: Hazy Frontier of the Discovery Process,* 35 Tenn. L. Rev. 35 (1967). In denying the right of discovery, the following cases referred to the contentions asserting the unconstitutionality of compulsory discovery in justification of its narrow interpretation of the term "subject matter." *Hillman v. Penny,* 29 F.R.D. 159 (E.D. Tenn. 1962) ; *Gallimore v. Dye,* 21 F.R.D. 283 (E.D. Ill. 1958) ; *State ex rel. Hersman v. District Court,* 142 Mont. 139, 381 P. 2d 799 (1963) ; *Mecke v. Bahr, supra.*

In *Mecke v. Bahr, supra,* the four to three Nebraska decision, Justice Brewer, concurring *in the decision,* wrote: "Constitutional questions were not before the court in considering this case and I am sure that nothing in the opinion was meant to infer that this court was in its decision passing upon that aspect of the case." *Id.* at 592, 129 N.W. 2d at 578.

The only decision which has come to our attention since the 1970 amendment to Federal Rule 26(b) is *Helms v. Richmond-Petersburg Turnpike Authority,* 52 F.R.D. 530 (E.D. Va. 1971). In that case, District Judge Merhige overruled defendant's contentions "that Rule 26(b) (2) deprives defendants of personal and property rights without due process of law; grants special privileges to a favored class of litigants; denies defendants equal protection of the law; amounts to a judicial sanction for an unlawful search and seizure; and is an unlawful invasion of privacy." His opinion includes the following: "Furthermore, disclosure of such policies is not a significant invasion of privacy, and in this Court's view to say disclosure will lead to further disclosures which should be sanctioned is too speculative to be cognizable, especially in view of the passage of a rule limited specifically to insurance agreements. Thus, the Rule is not an abridgement of the defendants' constitutional rights."

Obviously, a disclosure of the facts concerning defendant's liability insurance policy would not deprive her of property or constitute a seizure thereof. Nor would it impair defendant's right to contract or the obligations of her contract. Disclosure would take nothing from defendant's rights or her insurance company's rights under the contract. It would simply apprise plaintiff of the facts concerning the insurance agreement. Moreover, having an equal right of discovery, there is no basis for defendant's contention that plaintiff's exercise of the right of discovery would deprive defendant of the equal protection of the laws.

In support of her contention that compulsory disclosure would constitute an invasion of what she calls her constitutional right of privacy, defendant cites *Flake v. News Co.,* 212 N.C. 780, 195 S.E. 55 (1938). In *Flake,* this Court held that the facts in evidence were sufficient to constitute a tortious invasion of the plaintiff's right of privacy. Specifically, this Court held "that the unauthorized use of one's photograph in connection with an advertisement or other commercial enterprise gives

rise to a cause of action which would entitle the plaintiff, without the allegation and proof of special damages, to a judgment for nominal damages, and to injunctive relief, if and when the wrong is persisted in by the offending parties." *Id.* at 792, 195 S.E. at 64. The right of privacy was not considered as a constitutional right. Neither exploitation nor embarrassment would be involved in the disclosure by defendant of her liability insurance coverage. If defendant or her insurance company or both would prefer not to divulge this information *to the general public,* defendant could request that the court under Rule 30(b) enter a protective order that the information be given in private and withheld from the general public.

Although G.S. 20-279.18 permits alternate methods, ordinarily "[p]roof of financial responsibility," that is, "[p]roof of ability to respond in damages for liability . . . arising out of the ownership, maintenance or use of a motor vehicle," G.S. 20-279.1(11), is given by a certificate of liability insurance. G.S. 20-279.21(f)(2) provides that every "motor vehicle liability policy" given as "proof of financial responsibility" shall be subject to the provision that "[t]he satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of such injury or damage." A regulation adopted by the Commissioner of Insurance pursuant to G.S. 58-9 and G.S. 54-33.2, and filed with the Secretary of State as provided by G.S. 143-196, provides: "Companies writing liability insurance in the State of North Carolina shall not issue any policy which relieves the company of liability on account of the insolvency of the assured nor which requires that actual payment of loss shall have been made by the assured in order to bind the Company."

In North Carolina, every policy of liability insurance is available for the benefit of a person to whom the insured is legally obligated even though the insured is insolvent and unable to discharge his liability. Liability insurance is purchased both to protect the insured from actual out-of-pocket loss and to give protection, within the policy limits, to any person for whose injuries the insured becomes legally liable. Without regard to whether the policy provides coverage in excess of the required limits, the insurer, through its counsel and adjusters, has the right and the obligation to defend the action against its insured and to conduct negotiations for settlement.

Unquestionably, inquiry as to whether defendant complied with the minimum statutory requirements in respect of liability insurance coverage cannot be considered an improper invasion of her right of privacy. Access to that information may be obtained from the Department of Motor Vehicles. G.S. 20-166.1(i). The 1971 amendment to Rule 26(b) gives an injured party the right of discovery of all facts relating to defendant's liability insurance coverage.

Seemingly, defendant is alarmed because of her apprehension that approval of the right to discover the existence and contents of a party's liability insurance policy in accordance with the 1971 amendment of Rule 26(b) would open the door for discovery of a party's general assets prior to an adjudication as to liability and damages. We first note that this question will not arise unless the General Assembly undertakes to authorize such discovery. Even if this improbable event should occur, defendant's apprehension is unwarranted. There is a marked distinction between a party's liability insurance policy and his general assets.

"Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value." *People ex rel. Terry v. Fisher, supra* at 238, 145 N.E. 2d at 593. It is not an "asset" as that term is normally used. One does not pay any type of tax on the amount of his liability insurance policy. "The insurance policy is unique in that its existence is virtually the only fact bearing on the collectibility of the judgment that plaintiff either must ascertain from defendant or not at all." 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2010 at p. 90 (1970).

A distinction between a liability insurance policy and general assets of an insured is well stated by Justice McCoy in *Doak v. Superior Court*, 257 Cal. App. 2d 825, 65 Cal. Rptr. 193, 27 A.L.R. 3d 1362 (1968), as follows: "A public liability insurance policy in force at the time of the tort establishes a special fund to which the injured party may look for the payment of his claim when the defendant's liability has been legally established by a judgment against him. (Ins. Code, §§ 11580, 11580.1.) That fund cannot be dissipated or destroyed by defendant during the pendency of the action. This is not true with respect to defendant's other assets. Unlike defendant's

liability. insurance, the net dollar value of his other assets, real and personal, before his liability has been established by judgment, is not the measure of the collectibility of any judgment which may be entered against him. Whether such a judgment can be collected depends on the nature of his assets at and after the time the judgment is entered. Since the law does not require a potential judgment debtor in a tort action to maintain his assets intact from the date of the tort to the date of the judgment establishing his liability, it may well be that, through circumstances beyond his control, the defendant may not own any assets at the time he becomes a judgment debtor. This, of course, is a normal hazard of all tort litigation." *Id.* at 832, 65 Cal. Rptr. at 197-98; 27 A.L.R. 3d at 1369-70. In *Doak,* discovery was allowed as to the defendant's liability insurance coverage but denied as to the defendant's general assets.

As stated by Judge Hanson in *Landkammer v. O'Laughlin,* 45 F.R.D. 240 (S.D. Iowa 1968): "Information concerning defendant's general assets, moreover, may be secured by plaintiff through other sources; yet the restrictive rule would leave plaintiff ignorant of the existence and extent of the very asset which most affects the value of his judgment. The liberal rule thus does not upset the natural bargaining position of the parties. Instead, the effect of discovery of insurance coverage is to equalize the knowledge of both parties, with the result that settlements will be based more upon a fair evaluation of plaintiff's claim and less upon ignorant conjecture concerning the depth of defendant's pocket. Courts cannot forever hold themselves, as if unknowing, above that stage of litigation wherein negotiation and settlement occur."

[2, 3] We hold the 1971 amendment to Rule 26(b) is a valid exercise of legislative authority; that enforced discovery as authorized by its provisions is not an unwarranted invasion of defendant's privacy; and that this legislative enactment is not unconstitutional on any of the several grounds asserted by defendant.

We take note of defendant's contention that forced disclosure of liability insurance coverage would be "unduly prejudicial to the public interest." Suffice to say, whether the 1971 amendment to Rule 26(b) was wise or unwise was for determination by the General Assembly.

Marks v. Thompson

We further note defendant's contention that forced disclosure of liability insurance coverage would be "inconsistent with fundamental principles of liberty and justice" and render "defendant's bargaining position subservient to plaintiff's bargaining position." Contrary to defendant's contention, equal knowledge of all material facts equalizes the bargaining positions of plaintiff and defendant. Incidentally, there are instances in which the same insurance company has issued a liability insurance policy to each of the owners and operators involved in and injured by a collision.

In negotiations for settlement of tort litigation, the principal factors to be evaluated are (1) the evidence pertinent to the issues determinative of liability; (2) the nature and extent of plaintiff's injuries and damages; and (3) the collectibility of any judgment plaintiff may obtain. In certain cases, a defendant and his insurance carrier would prefer that the plaintiff be uninformed and forced to speculate concerning the collectibility of a judgment. On the other hand, a defendant and his insurance company would doubtless be glad to inform plaintiff and plaintiff's counsel that defendant's liability coverage did not exceed the mandatory requirements when this is the case.

Whether disclosure of insurance coverage will result in a greater number of settlements without trial is uncertain. In our view, the promotion of settlements is not the primary purpose of the 1971 amendment to Rule 26(b). Rather, its primary purpose is to enable both plaintiff and defendant to have equal information concerning all facts necessary to enable each to make a fair evaluation of his position incident to settlement negotiations.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.