Harco Nat'l Ins. Co. v. Grant Thornton LLP, 2008 NCBC 5

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

| | | |
|---|---|---|
| HARCO NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 05 CVS 2500 |
| GRANT THORNTON LLP, | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| SIRIUS AMERICA INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 05 CVS 6212 |
| GRANT THORNTON LLP, | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| HARCO NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 05 CVS 2299 |
| BDO SEIDMAN, LLP, | ) ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL GRANT THORNTON TO RESPOND TO INTERROGATORY NO. 27

{1}     This matter is before the Court on Plaintiff Harco National Insurance Company's ("Harco") Motion to Compel additional information concerning Defendant Grant Thornton's ("Grant Thornton") insurance coverage.  Specifically Harco seeks to learn how much coverage remains on the policies and information to verify that amount.  It already knows the face value of coverage available to Grant Thornton for the years at issue.[1]

{2}     Harco seeks to compel Grant Thornton to fully answer Interrogatory 27, which asks:

> For each insurance policy that does, will or may provide coverage, whether by primary or excess coverage, for claims, causes of action or damages claimed against Grant Thornton by Harco in the First Amended Complaint, and as amended, in this action, please state:
> a.   Whether other claims have been made against the policy for the 2005 coverage year;
> b.   The amount of the claims, defense costs, and/or deductions already subtracted from each policy for the 2005 coverage year; and
> c.   The remaining balances of coverage on each policy for the 2005 coverage year.

(Pl.'s Mot. Compel ¶ 3.)

{3}     It is undisputed that other claims have been made against those policies which might provide coverage for the claims asserted by Harco in the Amended Complaint and that defense costs have also been paid from those policies.  The policies are "claims made" policies.  That means that the full coverage amount can or may be eroded by prior claims and defense costs.  Harco wants to know the amount of the remaining coverage and what has caused the diminution in value.

{4}     The motion to compel requires interpretation of North Carolina Rule of Civil Procedure 26(b)(2).  There is no North Carolina precedent for the specific interpretation required here.  Rule 26(b)(2) provides that a party "may obtain

---

[1] The policies have been produced subject to the Protective Order in place in this case.

discovery of the existence and contents of any insurance agreement."[2]  Grant Thornton would read this language restrictively to limit discovery to the actual policies themselves. Harco would read this language broadly to include any information about the availability of coverage.  Neither interpretation is correct.

{5}     The North Carolina Supreme Court has made it clear that the purpose of the rule was to place parties on a level playing field in settlement negotiations.  In *Marks v. Thompson*, 282 N.C. 174, 192 S.E.2d 311 (1972), the Supreme Court upheld lower court rulings requiring a defendant in an automobile negligence case to disclose the amount of the coverage under his policies.  In doing so, the Court specifically stated that the purpose of the 1971 amendments to Rule 26 was to "enable the parties to conduct settlement negotiations realistically, that is, with equal knowledge of the true facts as to liability insurance coverage." *Id.* at 181, 192 S.E.2d at 316.  The result would be, in the Court's words, "to equalize the knowledge of both parties, with the result that settlements will be based more upon a fair evaluation of plaintiff's claim and less upon ignorant conjecture concerning the depth of defendant's pocket." *Id.* at 187, 192 S.E.2d at 319 (quoting *Landkammer v. O'Laughlin*, 45 F.R.D. 240 (S.D. Iowa 1968)).  The clear direction of the *Marks* decision is that when it comes time to negotiate, the amount of liability coverage available to a defendant should be disclosed to the plaintiff.  The *Marks* case stands for no broader interpretation of the rule.  It clearly stands for the proposition that a plaintiff is entitled to know the "true facts" about the amount of coverage.  The true facts would consist of the actual amount remaining to be paid under the policy if that amount differed from the face amount of the policy.

{6}     Since the 1971 amendment to the rule was adopted, mediation has become an accepted part of our litigation process and these parties will mediate this case prior to trial.  The parties are required to engage in mediation in good faith.

---

[2] "A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this subsection, an application for insurance shall not be treated as part of an insurance agreement."  N.C.R. Civ. P. 26(b)(2).

Refusing to provide accurate information about liability insurance coverage would not be mediating in good faith. To read the rule to permit obfuscation of the true facts about coverage would render the *Marks* decision meaningless.

{7}     The North Carolina rule is similar to Federal Rule of Civil Procedure 26(a)(1)(A)(iv). The federal rule has been fairly consistently interpreted to narrowly restrict the information required to be produced. In fact some authorities and federal decisions directly hold that the amounts remaining under coverage are not required to be produced. *Moore's Federal Practice*, Section 26.22 states the following about the analogous federal rule: "Rule 26(a)(1)(A)(iv) merely requires the disclosure of the insurance agreement itself, and does not require the production of other documents relating to the insurance, such as information regarding the remaining policy limits and information regarding any release of the insurer's obligations under the policy." That interpretation is supported by the cases cited by Grant Thornton. (Def.'s Resp. Br. Opp'n Mot. Compel 4–5 (listing cases supporting the interpretation of federal Rule 26(a)(1)(A)(iv) stated above).)

{8}     The rationale behind a narrow construction of the rule is clear. It prevents discovery between parties from evolving into a needless side dispute over what a defendant's coverage ought to be — an issue unrelated to the merits of the case. Here, Harco has asked for information that is in flux and may change with frequency. It is not for this Court to resolve disputes between Grant Thornton and its insurance companies, nor is that a matter in which Harco has any presently vested interest. The additional information it seeks is not related to the merits of this case and can only lead to unnecessary argument over the policy limits. The additional policy information sought by Harco is not relevant to the merits of this case. In addition, the information will change over time rendering the only pertinent information the amount of coverage available when settlement negotiations or mediation take place.

{9}     Where the North Carolina Supreme Court has provided guidance on one of our rules that differs from the interpretation of an analogous federal rule by the federal courts, this Court is bound by the North Carolina Supreme Court's direction.

Accordingly, the motion to compel is granted to the extent that Grant Thornton is required to disclose to Harco the remaining amount of coverage under its applicable liability insurance policies.  Such disclosure shall be made at least ten days prior to the beginning of mediation or settlement negotiations.  The motion to compel is denied to the extent it seeks additional information about the coverage.

{10}　IT IS SO ORDERED this the 4th day of March 2008.

The Honorable Ben F. Tennille
Chief Special Superior Court Judge
for Complex Business Cases